**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAOUD SHAAYA and MARK FREIBURGHOUSE, individually and on behalf of a class of all others similarly situated, | CASE NO. 2:20-CV-5679-CCC-MF |
| Plaintiffs, | |
| v. | |
| JAGUAR LAND ROVER NORTH AMERICA LLC, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JAGUAR LAND ROVER NORTH AMERICA LLC'S MOTION TO DISMISS AMENDED COMPLAINT**

**CONTENTS**

I.      PROCEDURAL BACKGROUND .................................................................. 2

II.     FACTUAL BACKGROUND ........................................................................ 3

III.    ARGUMENT ............................................................................................. 7

        A.      Standards Applicable to This Motion to Dismiss ............................... 7

                1.      Rule 12(b)(6) Standard ........................................................... 7

                2.      Rule 9(b) Standard. ................................................................. 8

                3.      Rule 12(b)(1) Standard. .......................................................... 9

        B.      Plaintiff Freiburghouse Lacks Article III Standing. ........................ 10

        C.      Plaintiffs' Express Warranty Claims Under New York and California Law
                Should be Dismissed ...................................................................... 12

                1.      Plaintiff Shaaya's Claim for Breach of Express Warranty Under
                        N.Y. U.C.C. § 2-313 (Count II) Should be Dismissed ............. 12

                2.      Plaintiff Freiburghouse's Claim for Breach of Express Warranty
                        Under California Law Should be Dismissed (Count IX) ........... 17

        D.      Plaintiffs' Implied Warranty Claims Should be Dismissed ............... 19

                1.      Plaintiff Shaaya's Claim for Breach of Implied Warranty of
                        Merchantability Under N.Y. U.C.C. § 2-314 (Count III) Should be
                        Dismissed .............................................................................. 19

                2.      Plaintiff Freiburghouse's Claim for Breach of Implied Warranty of
                        Merchantability Pursuant to the Song-Beverly Consumer Warranty
                        Act, Cal. Civ. Code § § 1792 and 1791.1, *et seq.* (Count X) Must
                        Be Dismissed ......................................................................... 21

        E.      Plaintiffs' Claim Under the Magnuson-Moss Warranty Act, 15 U.S.C. §
                2301, *et seq.* (Count V) Should Be Dismissed ................................. 22

        F.      Plaintiffs' Fraudulent Omission Claim (Count IV) Should be Dismissed ........... 23

                1.      Plaintiffs Have Not Alleged Their Fraud Claims With the
                        Requisite Particularity Required By Rule 9(b) ........................ 25

                2.      Plaintiffs Have Not Sufficiently Alleged That JLRNA Owed a
                        Duty to Disclose ..................................................................... 26

DM1\11453923.1

G.     Plaintiffs' Statutory Fraud and Consumer Protection Claims Should be
       Dismissed.......................................................................................................... 28

       1.     Plaintiff Shaaya's N.Y. G.B.L. § 349 Claim (Count I) Remains
              Insufficiently Pled and Should be Dismissed ............................................28

       2.     Plaintiff Freiburghouse's Claim for Violation of the California
              Consumer Legal Remedies Act (Count VII) Should be Dismissed..........31

       3.     Plaintiff Freiburghouse's Claim Under California's Unfair
              Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (Count
              VIII) Should be Dismissed ......................................................................34

H.     Plaintiffs' Unjust Enrichment Claim (Count VI) Should be Dismissed ............... 35

CONCLUSION...............................................................................................................37

DM1\11453923.1

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Asghari v. Volkswagen Grp. Of America, Inc.*, 42 F. Supp. 3d 1306 (C.D. Cal. 2013) ...................................................................................................................17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................8

*Avola v. Louisiana-Pacific Corp.*, 991 F. Supp. 2d 381 (E.D.N.Y. 2013) ...................12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................7

*Bildstein v. MasterCard Int'l., Inc.*, No. 03-cv-9826I, 2005 WL 1324972 (S.D.N.Y. June 6, 2005)..............................................................................30

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997)......................6

*Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206 (S.D.N.Y. 2007), *aff'd*, 354 Fed.App'x 496 (2d Cir. 2009) ...............................................23

*Chan v. Daimler AG*, No. 11-5391, 2012 WL 5827448 (D.N.J. Nov. 9, 2012) ...........11

*Chiarelli v. Nissan N. Am, Inc.*, 2015 WL 5686507 (E.D.N.Y. Sept. 25, 2015) ...........21

*Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220 (C.D. Cal. 2010) ......32

*Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) .......................18, 22

*Contreras v. Toyota Motor Sales USA, Inc.*, No. 09-6024, 2010 WL 2528844 (N.D. Cal. June 18, 2010), *rev'd on other grounds*, 484 F. App'x 116 (9th Cir. 2012) ................................................................................................ 32-33

*Corson v. Toyota Motor Sales, U.S.A., Inc.*, No. 12-cv-08499, 2013 WL 1802709 (C.D. Cal. Apr. 24, 2013) ...................................................................18

*Cummings v. FCA USA LLC*, 401 F. Supp. 3d 288 (N.D.N.Y. 2019).........14, 23, 28, 30

*Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519 (E.D.N.Y. 2006) ......20

*Dixon v. Ford Motor Co.*, No. 14-cv-6135, 2015 WL 6437612 (E.D.N.Y. Sept. 30, 2015) ..........................................................................................30

*Eisen v. Porsche Cars North America, Inc.*, No. 11-9405, 2012 WL 841019 (C.D. Cal. Feb. 22, 2012)...............................................................................24-26

*Employer's Ass'n of New Jersey v. New Jersey*, 601 F. Supp. 232 (D.N.J. 1985), *aff'd*, 774 F.2d 1151 (3d Cir. 1985) .....................................................10

*Estrada v. Johnson & Johnson*, No. 16-7492, 2017 WL 2999026 (D.N.J. Jul. 14, 2017) ...............................................................................................................11

*FOCUS v. Allegheny Cty. Ct. Com. Pl.*, 75 F.3d 834 (3d Cir. 1996) .............................9

*In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451 (D.N.J. 2005) ...................10

*FW/PBS, Inc. v. Dallas*, 493 U.S. 215 (1990) ..............................................................10

*Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212 (S.D.N.Y. 2015)............................13

*In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525 (E.D. Mo. 1997), *aff'd sub nom.*, *Briehl v. Gen Motors Corp.*, 172 F.3d 623 (8th Cir. 1999)...............................................................................................................11

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.,* 8 F. Supp. 3d 467 (S.D.N.Y. 2014) ........................................................................................................31

*Gould v. Helen of Troy Ltd.*, 2017 WL 1319810 (S.D.N.Y. Mar. 30, 2017)..........................20, 23

*Gray v. Toyota Motor Sales, U.S.A., Inc.,* 554 F. App'x 608 (9th Cir. 2014) ..............................33

*Haag v. Hyundai Motor Am.*, 294 F. Supp. 3d 102 (W.D.N.Y. 2018) ....................................13, 20

*Henry v. Rehab Plus, Inc.*, 404 F. Supp. 2d 435 (E.D.N.Y. 2005) .................................31

*Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016 (N.D. Cal. 2016) .....................................32

*Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523 (E.D.N.Y. 2012)....................20

*James v. Johnson & Johnson*, No. 10-3049, 2011 WL 198026 (D.N.J. Jan. 20, 2011) ...............................................................................................................11

*Jordan v. Paul Financial, LLC*, 285 F.R.D. 435 (N.D. Cal. 2012) ...............................24

*Kearney v. Hyundai Motor Am.*, No. 90-1298, 2010 WL 8251077 (C.D. Cal. Dec. 17, 2010) ...............................................................................................................19

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ...................................... 25-26

*Kent v. Hewlett-Packard Co.*, No. 09-5341, 2010 WL 2681767 (N.D. Cal. July 6, 2010) ...............................................................................................................22

*Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274 (S.D.N.Y. 2014)........................36

*Kommer v. Ford Motor Co.*, No. 1:17-cv-296, 2017 WL 3251598 (N.D.N.Y. July 28, 2017) ...............................................................................................................30

iv

*Koronthaly v. L'Oreal USA, Inc.*, No. 07-5588, 2008 WL 2938045 (D.N.J. July 29, 2008), *aff'd*, 2010 WL 1169958 (3d Cir. 2010) ................................................................ 11

*Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962 (C.D. Cal. 2013) .......................... 19

*Long v. Graco Children's Products, Inc.*, No. 13-1257, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) ................................................................................................................ 22

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................................... 9-10

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204 (S.D.N.Y. 2007) ................................................................................................................ 25

*Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451 (S.D.N.Y 2014) ..................................... 14

*MB Technologies, Inc. v. Oracle Corp.*, No. 09-05988, 2010 WL 1576686 (N.D. Cal. Apr. 19, 2010) .......................................................................................................... 35

*Meserole v. Sony Corp. of America, Inc.*, No. 08-8987, 2009 WL 14003933 (S.D.N.Y. May 19, 2009) ...................................................................................................... 28

*Miller v. Hyundai Motor Am.*, No. 15-cv-4722, 2017 WL 4382339 (S.D.N.Y. Sept. 29, 2017) ...................................................................................................................... 13

*Morgath v. Siebenmann*, 129 F.3d 261 (2d Cir. 1997) ......................................................... 15

*Morin v. Trupin*, 711 F. Supp. 97 (S.D.N.Y. 1989) ........................................................... 26-27

*Nardella v. Braff*, 621 F. Supp. 1170 (S.D.N.Y. 1985) .......................................................... 29

*North Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369 (3d Cir. 2014) ........................... 9

*Odyssey Re(London) Ltd. v. Stirling Cook Browne Holdings, Ltd.*, 85 F. Supp. 2d 292 (S.D.N.Y. 2000), *aff'd*, 2 Fed. App'x 109 (2d Cir. 2001) ..................................... 24, 26

*Papasan v. Allain*, 478 U.S. 265 (1986) ............................................................................... 7-8

*Phillips v. Cty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ..................................................... 6-7

*Quintana v. B. Braun Med. Inc.*, No. 17-cv-6614, 2018 WL 3559091 (S.D.N.Y. July 24, 2018) ...................................................................................................................... 31

*Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571 (E.D.N.Y. 2012) .................................................... 16

*Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503 (S.D.N.Y. 2015) ......................................... 36

*Sherman v. Stryker Corp.*, No. 09-224, 2009 WL 2241664 (C.D. Cal. Mar. 30, 2009) ...................................................................................................................................... 21

*Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84 (D.N.J. 2011) ..................................................9

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ...........................................................................9

*Stoltz v. Fage Dairy Processing Ind., S.A.*, No. 14-cv-3826, 2015 WL 5579872
(E.D.N.Y. Sept. 22, 2015)................................................................................................31

*Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293 (3d Cir. 2003) ...................................9

*Sud v. Costco Wholesale Corp.,* 229 F. Supp. 3d 1075 (N.D. Cal. 2017) ....................................34

*Suddreth v. Mercedes-Benz, LLC*, 2011 WL 5240965 (D.N.J. Oct. 31, 2011)..............................21

*In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006) .......................................8

*Szymczak v. Nissan N. Am, Inc.*, 2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) ....................21, 29

*Tears v. Boston Scientific Corp.*, 344 F. Supp. 3d 500 (S.D.N.Y. 2018) .....................................16

*Tietsworth v. Sears, Roebuck & Co.*, No. 09-288, 2009 WL 3320486 (N.D. Cal.
Oct. 13, 2009) ...........................................................................................................22, 28

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and
Prods. Liab. Litig.*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010)....................................................35

*Weaver v. Chrysler Corp.*, 172 F.R.D. 96 (S.D.N.Y. 1997)................................................26, 29

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) .......................................................................10-11

*Whitson v. Bumbo*, No. 07-5597, 2009 WL 1515597 (N.D. Cal. Apr. 16, 2009)........................33

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012)...........................................28, 34

*Woods, v. Maytag Co.*, 807 F. Supp. 2d 112 (E.D.N.Y. 2011)..............................................25, 29

*Yu-Santos v. Ford Motor Co.*, No. 06-cv-1773, 2009 WL 1392085 (E.D. Cal. May
14, 2009) ...................................................................................................................17-18

**State Cases**

*Am. Suzuki Motor Corp. v. Super. Ct.*, 37 Cal. App. 4th 1291 (1995) .........................................22

*Aracena v. BMW of N. Am., LLC*, 159 A.D.3d 664 (N.Y. App. Div. 2018).................................20

*CBS Inc. v. Ziff-Davis Publ'g Co.*, 553 N.E.2d 997 (N.Y. 1990)...........................................15-16

*Corsello v. Verizon N.Y., Inc.*, 967 N.E. 2d 1177 (N.Y. 2012)...............................................35-36

DM1\11453923.1

*Jana L. v. West 129th St. Realty Corp.*, 322 A.D.3d 274 (N.Y. App. Div. 2005) ........................27

*Kennedy v. Baxter Healthcare Corp.*, 43 Cal.App. 4th 799 (1996).................................................18

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647
    N.E. 2d 741 (N.Y. 1995)..........................................................................................................30

*Slavin v. Hamm*, 210 A.D.2d 831 (N.Y. App. Div. 1994) .........................................................27

*Wildman & Bernhardt Const., Inc. v. BPM Assocs., LP*, 273 A.D.2d 38 (N.Y.
    App. Div. 2000) ........................................................................................................................27

**Federal Statutes**

15 U.S.C. § 1232 .............................................................................................................................26

15 U.S.C. § 2301 *et seq.*...........................................................................................................7, 22

Magnuson-Moss Warranty Act................................................................................................. 22-23

**State Statutes**

Cal. Bus. & Prof. Code § 17200 *et seq.* ...................................................................................7, 34

Cal. Civ. Code § 1750 *et seq.*....................................................................................................7, 31

Cal. Civ. Code § 1791.1 *et seq.* .................................................................................................7, 21

Cal. Civ. Code § 1792 ...............................................................................................................7, 21

Cal. Com. Code § 2313 ...................................................................................................................7

California Consumer Legal Remedies Act .....................................................................................31

N.Y. G.B.L. § 349.................................................................................................................*Passim*

N.Y. U.C.C. § 2-313 ............................................................................................................*Passim*

N.Y. U.C.C. § 2-313(2)...................................................................................................................12

N.Y. U.C.C. § 2-314 ...................................................................................................................7, 19

N.Y. U.C.C. § 2-314(1)...................................................................................................................20

N.Y. U.C.C. § 2-314(2)(c)..............................................................................................................20

DM1\11453923.1

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................................*Passim*

Fed. R. Civ. P. 12(b)(1)............................................................................................9

Fed. R. Civ. P. 12(b)(6)............................................................................................1, 7

Defendant Jaguar Land Rover North America LLC ("JLRNA") respectfully submits this memorandum of law in support of its Motion to Dismiss Plaintiffs' Amended Complaint (the "Amended Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(b)(1), and 9(b).

## PRELIMINARY STATEMENT

This is a putative class action lawsuit arising from allegations that certain diesel vehicles manufactured by JLRNA suffer from a defective design.  In his original Complaint, Plaintiff Daoud Shaaya ("Plaintiff Shaaya" or "Mr. Shaaya") was unable to articulate exactly what that defect is.  The Amended Complaint joins an additional Plaintiff, Mark Freiburghouse ("Plaintiff Freiburghouse" or "Mr. Freiburghouse"), and adds a slew of new claims under California state law, which fare no better than the claims in the original Complaint.  In fact, the Amended Complaint serves only to further cloud Plaintiffs' theories of liability – whatever they may be.

Plaintiffs re-assert the speculative potpourri of alleged flaws raised by Mr. Shaaya previously, variously proposing that the vehicles are defective either because: (1) drivers did not know their vehicles had DPF filters that required regeneration; (2) the DPF filters clog too easily; (3) the vehicles' warning light systems are defective; (4) drivers are unable to perform the regeneration process; or (5) a clogged DPF can allegedly cause a sudden loss of power or engine fire (though he does not allege that this has occurred to him, or anyone else).  Remarkably, Mr. Freiburghouse adds yet another element to this amalgamation of allegations – claiming that his vehicle suffered from issues with the diesel exhaust fluid tank and diesel exhaust fluid injector. Plaintiffs attempt to group these allegations together into a single combined "DPF Defect."

Nonetheless, Plaintiffs do not assert an independent cause of action for any discrete design defect.  Rather, they advance a series of conflicting concepts in an attempt to assert claims under New York law, California law, and federal law.  They assert at some points that JLRNA

knew of these alleged defects and intentionally concealed them from consumers, while elsewhere alleging that the issues were well known to the public and widely discussed for years prior to their purchase dates.  One Plaintiff alleges his DPF warning light activated several times; one alleges that his did not at all.  Sometimes they allege the purported DPF defect was covered by warranty; at other times they claim the express warranty was breached.  They proclaim that safety issues exist but do not point to a single example of such a concern.

Simply put, the original Complaint was a catch-all mash-up of competing and insufficient allegations.  Rather than properly amending that pleading, Plaintiffs have instead elected to further expand their allegations – drawing in even more possible "defects" and even more speculative theories of relief – all while failing to put forth any more supporting facts.  Now alleging a total of ten causes of action,  Plaintiffs are apparently attempting to compensate for the lack of quality in their claims with sheer quantity.  As set forth more fully below, each of the ten causes of action pled fails as a matter of law, and the Amended Complaint must be dismissed in its entirety.

## I.      PROCEDURAL BACKGROUND

Mr. Shaaya initiated this action by filing a Complaint on May 7, 2020.  (ECF No. 1).  On July 17, 2020, JLRNA filed a Motion to Dismiss the Complaint.  (ECF No. 14).  On August 28, 2020, Mr. Shaaya, joined by Mr. Freiburghouse, filed an Amended Complaint.  (ECF No. 24). On September 9, 2020, JLRNA filed a Stipulation to Extend its deadline to respond to the Amended Complaint from September 11, 2020 to October 2, 2020, which the Court subsequently ordered on September 10, 2020.  (ECF Nos. 26, 27).  JLRNA now files its Motion to Dismiss the Amended Complaint in accordance with this Court's September 10, 2020 Order.

## II.   **FACTUAL BACKGROUND**

Mr. Shaaya alleges that he leased a 2018 model diesel Range Rover HSE from the Land Rover Manhattan dealership in New York, New York in or around July 2018.  (ECF No. 24, ¶ 9).[1]  Mr. Shaaya does not allege that he conducted any sort of research prior to entering this lease, nor does he allege that he viewed any advertisements or read any articles pertaining to the 2018 Range Rover or any other vehicle.  His pre-lease diligence consisted of test-driving the vehicle, speaking with a dealer sales representative, and viewing the "Monroney sticker" on the vehicle's window.  (*Id.*)

Mr. Freiburghouse alleges that he purchased a 2017 model diesel Land Rover Range Rover Sport HSE equipped with a diesel engine from Penske Jaguar Land Rover in Cerritos, California in or around December 2016.  (*Id.*, ¶ 14).  Like Mr. Shaaya, Mr. Freiburghouse does not allege that he conducted any sort of research prior to making his purchase or that he viewed any advertisements or articles pertaining to any Jaguar vehicles.  Mr. Freiburghouse's pre-purchase diligence also consisted only of test-driving the vehicle, speaking with a dealer sales representative, and viewing the Monroney sticker.  (*Id.*)

Both Plaintiffs allege that their Range Rover vehicles are equipped with a diesel exhaust system, including a DPF.  (*Id.*, ¶¶ 1, 9, 14).  A DPF is a filter designed to remove from the exhaust of a diesel engine the diesel particulate matter, which results from the incomplete combustion of diesel fuel and which subsequently produces black carbon particles colloquially known as "soot."  (*Id.*, ¶¶ 24-25).  The DPF captures and stores soot particles from the vehicle's exhaust, thus lowering tailpipe emissions.  (*Id.*, ¶ 1).  The DPF can be cleaned, and thus used

---

[1] The factual background relies on allegations in Plaintiffs' Amended Complaint.  These allegations are assumed to be true solely for purposes of this motion.

over a longer period of time, through a combustion process called regeneration.  (*Id*., ¶¶ 1, 2).

Regeneration may be passive (occurring automatically while the vehicle is being driven) or

active (a process initiated by the vehicle's on-board computer to increase exhaust temperature,

causing the soot to be burned).  *Id*.  Both Plaintiffs' vehicles are equipped with a warning light

which activates to advise a driver when to commence the regeneration process.  (*Id*.)

Plaintiffs do not allege that they had conversations with dealership representatives about

any aspect of the DPF, including how often a regeneration might have to be performed or what

its lifespan will be.  Even more significant, Plaintiffs never allege that they had communications

with any JLRNA representatives about anything at all.

In November 2018, four months into his lease, the DPF warning light of Mr. Shaaya's

vehicle illuminated.  (*Id*., ¶ 10).  After unsuccessfully attempting to perform the regeneration

process himself, Mr. Shaaya returned his vehicle to the dealership, where he ultimately was

advised he would need a new DPF.  (*Id*.)  Mr. Shaaya alleges that he requested that the cost of

this replacement part be covered pursuant to the vehicle's New Vehicle Limited Warranty (the

"Warranty"), but that this request was denied by either the dealership or "Defendant's customer

relations department" (he does not say which).  Mr. Shaaya asserts contradictory allegations

about the cost of this repair – at first, claiming he was advised it would cost "over $5,000," while

elsewhere alleging that he paid "$3,122.98 out-of-pocket for the repair."  (ECF No. 24, ¶¶ 10-

11).

Mr. Shaaya alleges that his vehicle continued to experience problems even following the

initial replacement of the DPF in November 2018.  He does not describe those episodes, save for

one instance in February 2019, where his vehicle's DPF warning light activated.  (*Id*., ¶ 12).  At

such time, Mr. Shaaya took the vehicle to the dealership and the part was replaced "under

warranty" at no cost to him.  (*Id.*)  In fact, Mr. Shaaya does not allege that he has paid any

expenses in connection with the purported defect aside from the initial $3,122.98.  (*Id.*, ¶¶ 11-

12).  Nonetheless, he alleges a variety of speculative and unspecific damages, including claims

that "the value" and "resale value" of his vehicle has diminished (*id.*, ¶ 58) and that he "would

have not purchased [his vehicle]" or "would have paid less" had he been aware of the alleged

defect – puzzling claims for someone who obtained his vehicle pursuant to a lease.  (*Id.*, ¶ 109).

For his part, Mr. Freiburghouse alleges that, in or about August 2020, approximately

forty-four months after his purchase, his vehicle's "check engine light" illuminated.  (*Id.*, ¶ 15).

Unlike Mr. Shaaya, Mr. Freiburghouse alleges that his DPF warning light did *not* illuminate.

(*Id.*).  Upon having his vehicle inspected at Penske Jaguar Land Rover in Cerritos, Mr.

Freiburghouse was informed that the car's diesel exhaust fluid tank needed to be replaced, which

the dealer performed free of cost.  (*Id.*).  In fact, Mr. Freiburghouse was never charged for any

part replacement or service to his vehicle whatsoever, (*Id.*),  and he alleges no out-of-pocket

damages.  Rather, he alleges only abstract injury, claiming he "continues to be damaged because

he was knowingly sold a defective vehicle[,] has not been offered a suitable repair or

replacement . . . and owns a vehicle that is prone to" DPF malfunctions.  (*Id.*)  Nowhere in his

allegations does Mr. Freiburghouse explain what the diesel exhaust fluid tank has to do with the

DPF.

Neither Plaintiff alleges that the DPF was among the classes of repairs covered by the

Warranty.  They merely claim that the Warranty "provided 48 months/50,000 miles 'Basic

Coverage' and 96 months/80,000 miles 'Emissions Coverage'" (*id.*, ¶¶ 89, 160), without

explaining what those coverages encompass under the Warranty terms.  The Warranty is attached to this Motion to Dismiss as Exhibit "A."[2]

Mr. Shaaya alleges further that, while his vehicle was being repaired, he had a conversation with an unidentified "service representative" who advised that the dealership had "received a lot of complaints" regarding "the problem he experienced" and was "limit[ing] the number of diesels sold because 'the problems' were costing the dealership too much time."  (*Id.*, ¶ 11).  In a bizarre attempt to bolster this claim and frame Land Rover vehicles as deficient products, Plaintiffs provide quotes from "confidential witnesses" and anonymous internet commenters who have purportedly expressed dissatisfaction with their Land Rover products. (*Id.*, ¶¶ 46-48, 52).

On the basis of these varying and contradictory allegations, Plaintiffs bring a Class Action Complaint, asserting individual claims in connection with the lease and purchase, respectively, of their vehicles, and also on behalf of all purchasers of any "other Jaguar Land Rover vehicle equipped with a substantially similar DPF system within the United States, or alternatively within the States of New York and California."  (*Id.*, ¶ 4).  The crux of Plaintiffs' Amended Complaint is their claim that JLRNA "knew the Class Vehicles were defective and not fit for the intended purpose" yet allegedly "actively concealed the true nature and extent" of this purported defect.  (*Id.*, ¶ 6).

The Amended Complaint attempts to plead the following causes of action: Violations of New York's General Business Law for Deceptive Acts or Practices § 349 by Plaintiff Shaaya

---

[2] For purposes of a motion to dismiss, the court may consider any document "integral to or explicitly relied upon in the complaint."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  Here, the court may consider the Warranty as it is, by definition, integral to Plaintiffs' breach of warranty claims.

(Count I); Breach of Express Warranty under N.Y. U.C.C. § 2-313 by Plaintiff Shaaya (Count II); Breach of Implied Warranty of Merchantability under N.Y. U.C.C. § 2-314 by Plaintiff Shaaya (Count III); Fraudulent Omission by both Plaintiffs (Count IV);  Breach of Implied and Written Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.,* by both Plaintiffs (Count V); Unjust Enrichment by both Plaintiffs (Count VI); Violations of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, by Plaintiff Freiburghouse (Count VII); Violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, by Plaintiff Freiburghouse (Count VIII); Breach of Express Warranty under Cal. Com. Code § 2313 by Plaintiff Freiburghouse (Count IX); and Breach of Implied Warranty of Merchantability under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 and 1791.1, *et seq.*, by Plaintiff Freiburghouse (Count X).

**III.     ARGUMENT**

> **A.     Standards Applicable to This Motion to Dismiss**
>
> > **1.     Rule 12(b)(6) Standard**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [non-moving party]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  Nevertheless, the plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  To that end, the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Id*. at 555.  A court is not bound to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In order to survive a motion to dismiss, a complaint must "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). A claim has facial plausibility when the allegations allow the court to draw a reasonable inference that the defendant is liable for misconduct alleged. *Id.* This plausibility standard requires more than speculation that a defendant has acted unlawfully. *Id.* While detailed factual allegations are not required, a plaintiff must allege more than conclusory statements or a recitation of the elements of a cause of action in order to survive a motion to dismiss. *Id.*

Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Courts are not compelled, however, to accept unsupported conclusions and unwarranted inferences. *Papasan*, 478 U.S. at 286.

## 2.      Rule 9(b) Standard

Fraud-based claims are subject to a heightened pleading standard, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). At a minimum, Rule 9(b) requires a plaintiff to allege the essential factual background that would accompany the first paragraph of any newspaper story – that is, the "who, what, when, where and how of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (citation omitted). To satisfy the specificity requirement of Rule 9(b) in the context of a purchase, the pleadings must state: (1) what the misrepresentation was; (2) what was purchased; (3) when the conduct complained of occurred; (4) by whom the

misrepresentation was made; and (5) how the conduct led plaintiff to sustain an ascertainable loss. *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 104 (D.N.J. 2011).

### 3.    Rule 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) "governs motions to dismiss for lack of standing, as standing is a jurisdictional matter." *North Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2014) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006)). On a motion to dismiss for lack of standing, the plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny Cty. Ct. Com. Pl.*, 75 F.3d 834, 838 (3d Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). For the purposes of determining standing, the court "accept[s] as true all material allegations set forth in the complaint, and must construe those facts in favor of the complaining party." *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

The "irreducible constitutional minimum" of Article III standing contains three elements. *Lujan*, 504 U.S. at 560. First, the plaintiff must have suffered an injury in fact. *Id.* (citations omitted). An injury in fact is an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *Id.* (citing *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). And, as the Supreme Court has recognized, mere allegations that a defendant has violated a plaintiff's bare statutory rights, absent some allegation of concrete and particularized harm, are insufficient to satisfy the injury-in-fact requirement. *Spokeo*, 136 S. Ct. at 1549.

9

Second, there must be a causal connection between the injury and the conduct complained of, that is, the injury "has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (citing *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976)).  Third, it must be likely, as opposed to merely speculative, that the injury "will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 561 (citing *Simon*, 426 U.S. 38, 43).  The party invoking federal jurisdiction bears the burden of establishing these elements.  *Lujan*, 504 U.S. at 561; *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).

Importantly, an injury in fact "must be concrete in both a qualitative and temporal sense. The complainant must allege an interest to himself that is distinct and palpable."  *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).  Allegations of a potential future injury, or the mere possibility of a future injury, will not establish an injury-in-fact.  *Id.* at 158; *Employer's Ass'n of New Jersey v. New Jersey*, 601 F. Supp. 232, 238 (D.N.J. 1985), *aff'd*, 774 F.2d 1151 (3d Cir. 1985).   Furthermore, "[t]he standing inquiry does not change in the context of a putative class action . . . [S]tanding cannot be predicated on an injury which the plaintiff has not suffered, nor can it be acquired through the back door of a class action."  *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 461 (D.N.J. 2005).

## B.   Plaintiff Freiburghouse Lacks Article III Standing

As a threshold matter, Plaintiff Freiburghouse lacks standing to assert *any* claims, as he has not adequately alleged an injury-in-fact.  Accordingly, the claims asserted by Mr. Freiburghouse must be dismissed.[3]

---

[3] Plaintiff Freiburghouse joins Plaintiff Shaaya in asserting Counts IV through VI and is the sole plaintiff asserting Counts VII through X.

Unlike Mr. Shaaya, who alleges that he suffered out-of-pocket losses of several thousand dollars, Mr. Freiburghouse has not alleged an injury-in-fact and therefore lacks standing.  He denies out-of-pocket damages entirely, alleging that the Penske Jaguar Land Rover dealership to which he brought his vehicle for service waived the $189 diagnostic fee.  (ECF No. 24, ¶ 15).  His allegations of injury consist exclusively of his claims that he "continues to suffer actual damages in that the Class Vehicles and their DPF systems are defective and repeatedly fail requiring serial repairs or replacements," and that he suffered an alleged diminution in the value of his vehicle.  (ECF No. 24, ¶ 140).  This is essentially a "benefit of the bargain" theory that relies on speculative, future damages.  These claims are plainly insufficient to confer standing.

Indeed, Mr. Freiburghouse relies on the very theories of injury that federal courts analyzing standing challenges have repeatedly declared inadequate: a mere possibility of future injury, *Whitmore*, 495 U.S. at 155, and a benefit of the bargain theory.  *Koronthaly v. L'Oreal USA, Inc.*, No. 07-5588, 2008 WL 2938045, at *5 (D.N.J. July 29, 2008), *aff'd*, 2010 WL 1169958 (3d Cir. 2010) ("benefit of the bargain" allegation "could not sustain a claim of injury in fact"); *James v. Johnson & Johnson*, No. 10-3049, 2011 WL 198026, at *6-8 (D.N.J. Jan. 20, 2011) (rejecting "benefit-of-the-bargain" theory of standing in products liability action where plaintiffs' alleged injury was that they would not have purchased the product had they known of the alleged defect); *Estrada v. Johnson & Johnson*, No. 16-7492, 2017 WL 2999026, at *6-8 (D.N.J. Jul. 14, 2017) (same); *Chan v. Daimler AG*, No. 11-5391, 2012 WL 5827448, at *9 (D.N.J. Nov. 9, 2012) (holding that plaintiffs' allegations that the alleged defects in their vehicles "substantially affected the value of their vehicles" were "conclusory allegations" that were "insufficient to confer standing based on economic injury"); *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997), *aff'd sub nom.*, *Briehl v.*

11

*Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999) (dismissing claims for lack of standing where plaintiffs have "merely alleged they suffered a loss of resale value" because there were "no details surrounding these claims" and "no [allegations that a] plaintiff has attempted to sell his or her vehicle").

The breadth of authority makes clear that Mr. Freiburghouse's allegations of potential future injury are far too remote and abstract to qualify as an injury-in-fact.  Accordingly, this Court should dismiss each of Mr. Freiburghouse's claims as he lacks standing.

**C.   Plaintiffs' Express Warranty Claims Under New York and California Law Should be Dismissed**

**1.   Plaintiff Shaaya's Claim for Breach of Express Warranty Under N.Y. U.C.C. § 2-313 (Count II) Should be Dismissed**

In order to state a breach of express warranty claim pursuant to N.Y. U.C.C. § 2-313, a plaintiff must allege: (i) a material statement amounting to a warranty pursuant to N.Y. U.C.C. § 2-313(2); (ii) the buyer's reliance on this warranty as a basis for the contract with the immediate seller; (iii) a breach of the warranty; and (iv) injury to the buyer proximately caused by the breach.  *Avola v. Louisiana-Pacific Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013) (citing *CBS Inc. v. Ziff-Davis Publ'g Co.*, 553 N.E.2d 997, 1003 (N.Y. 1990)).  Mr. Shaaya fails to sufficiently allege <u>any</u> of the four prongs of a breach of express warranty claim.

**a.   Mr. Shaaya Fails to Allege That the DPF Defect was Within an Express Warranty**

Mr. Shaaya's breach of express warranty claim turns on the terms of the Warranty.  (ECF No. 24, ¶ 89).  The Warranty includes a "Warranty Statement," which covers defects in "factory-supplied materials" and "factory workmanship," providing:

> Jaguar Land Rover North America, LLC, warrants that during the warranty period, if a Land Rover vehicle is properly operated and maintained, repairs required to correct defects in factory-supplied materials or factory workmanship will be performed without charge

12

> upon presentment for service at an authorized Land Rover retailer; any component covered by this warranty found to be defective in materials or workmanship will be repaired, or replaced, without charge with a new or remanufactured part distributed by Jaguar Land Rover North America, LLC, at its sole option.

*See* Exhibit A, pg. 7.

Mr. Shaaya's breach of express warranty claim is premised on an alleged design defect. Under New York law, however, it is well-established that where a warranty protects against defects in materials and workmanship – as does the JLRNA Warranty – then such warranty covers only manufacturing defects and *not* design defects. *Haag v. Hyundai Motor Am.*, 294 F. Supp. 3d 102, 105 (W.D.N.Y. 2018); *see also Miller v. Hyundai Motor Am.*, No. 15-cv-4722, 2017 WL 4382339, at *4 (S.D.N.Y. Sept. 29, 2017) (same); *see also Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 226-27 (S.D.N.Y. 2015) (same). Indeed, as the *Haag* court recognized:

> [W]here a plaintiff makes only "conclusory references to manufacturing defects," and instead relies on allegations and/or evidence that the claimed defects are common to an entire class of vehicle based on their design, rather than the result of an error in the manufacturing process, the plaintiff's claim is more appropriately characterized as a design defect claim, and plaintiff cannot prevail on an express warranty claim concerning materials and workmanship.

*Haag*, 294 F. Supp. 3d at 105 (citing *Catalano v. BMW of North Am.*, 167 F. Supp. 3d 540, 555 (S.D.N.Y. 2016)).

While the Amended Complaint sometimes refers to the DPF Defect as a "manufacturing defect," *see, e.g.*, ECF No. 24, ¶ 110, it is evident that the allegations amount to a claim for a design defect. A "manufacturing defect is a mistake – an unintended deviation from normal or routine production that renders an ordinarily safe product dangerous," whereas a design defect "involves products made in the precise manner intended by the manufacturer" but which suffer

from some systemic defect.  *Cummings v. FCA USA LLC*, 401 F. Supp. 3d 288, 314 (N.D.N.Y.

2019) (citing *Urena v. Biro Mfg. Co.*, 114 F.3d 359, 363 (2d Cir. 1997)).  Courts may

characterize allegations as design or manufacturing defects absent an explicit designation or

despite an erroneous designation.  *See Cummings*, 401 F. Supp. 3d at 314 (construing an express

warranty breach as relating to a design defect despite the complaint failing to use such term); *see*

*also Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 467 (S.D.N.Y 2014) (same).

Plaintiffs allege that JLRNA became aware of the defect by virtue of "pre-production

testing," "pre-production design failure mode and analysis data," and "early consumer

complaints," thereby suggesting a systemic, rather than isolated, malfunction.  (ECF No. 24, ¶

38).  Moreover, the Amended Complaint asserts that the alleged defects stem from the DPF's

uniform design, and that an "adequate pre-release analysis of the design" would have "revealed

to Defendant that it does not operate properly and is not fit for its intended use."  (*Id.*, ¶¶ 39-40).

Plaintiffs additionally allege that JLRNA "introduced diesel engines equipped with DPFs" in

2016 and that they have remained substantially similar since.  (*Id.*, ¶¶ 40-41).  These further

allegations make clear that the defect alleged is systemic to the design of the DPF and not a mere

erroneous variation in Mr. Shaaya's vehicle caused by a manufacturing error.[4]

Even if Mr. Shaaya had sufficiently alleged a manufacturing defect, he still fails entirely

to connect any of the alleged representations in the Warranty to the DPF.  The Emissions

---

[4] There is no allegation that the manufacturing of Mr. Shaaya's *specific automobile* somehow
deviated from its intended design or construction.  Mr. Shaaya alleges that when his DPF was
repaired, his vehicle continued to "suffer from the DPF Defect" because "when repairs are
performed one defective component is merely replace[d] with a similarly defective component."
(ECF No. 24, ¶ 12).  Moreover, the fact that Plaintiffs seek to certify a class further establishes
that they are alleging a design defect rather than a manufacturing defect.  It belies logic to assert
that Plaintiffs could know of a specific manufacturing defect in every vehicle purchased by
unnamed and unknown class members.

Warranty does include design but only warrants that the design will conform with emissions standards. *Id.* at 12. Plaintiff Shaaya makes no claim that the design does not conform with emissions standards. Moreover, the Emissions Warranty does not cover the DPF, as discussed at Paragraph (C)(1)(a), *supra*. Further, Mr. Shaaya never even alleges that the Warranty covers the DPF, and for good reason: the terms "Diesel Particulate Filter" and "DPF" are not included anywhere in the Warranty. *See* Exhibit A. With respect to the automobile's emission control systems, the Warranty covers only the air induction system, the exhaust system (which includes the Diesel Selective Catalyst Reduction System – a component part separate from the DPF filter), the evaporative control system, the braking control system, and the powertrain control system. *See* Exhibit A, pg. 16. As there is no mention of the DPF in the Warranty or in any other material statement identified in the Complaint, Mr. Shaaya has not satisfied the first prong of a warranty claim under § 2-313.

### b. Mr. Shaaya's Allegations of Reliance are Insufficient

New York courts interpret the reliance element of N.Y. U.C.C. § 2-313 as a "basis of the bargain description of reliance." *Morgath v. Siebenmann*, 129 F.3d 261, 264 (2d Cir. 1997). This view of reliance "requires not more than reliance on the express warranty as being a part of the bargain between the parties" and "reflects the prevailing perception of an action for breach of express warranty as one that is no longer grounded in tort, but essentially in contract." *Ziff-Davis*, 553 N.E.2d at 1001 (citing *Randy Knitwear, Inc. v. American Cyanamid Co.*, 181 N.E.2d 399, 401 n.2 (N.Y. 1962)). Once the express warranty is "shown to have been relied on as part of the contract," the right to recovery is established by virtue of a breach. *Ziff-Davis*, 553 N.E.2d at 1001. Because Mr. Shaaya fails to allege that the DPF is included in the warranty, he necessarily cannot satisfy the reliance prong under § 2-313.

### c.     Mr. Shaaya's Allegations of Breach are Insufficient

New York courts have made clear that where a plaintiff is unable to allege with

specificity how the product or services have violated a term of an express warranty, a cause of

action pursuant to N.Y. U.C.C. § 2-313 must be dismissed.  *See Tears v. Boston Scientific Corp.*,

344 F. Supp. 3d 500, 513 (S.D.N.Y. 2018) (granting motion to dismiss N.Y. U.C.C. § 2-313

claim where there was no allegation that the product "was not as described by the [warranty]");

*see also Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 578-79 (E.D.N.Y. 2012) (granting motion to

dismiss N.Y. U.C.C. § 2-313 claim where the allegations were insufficient to draw the

reasonable inference that the product was defective or that there was a difference between what

defendants promised and what was provided).  This is precisely the case here.  Because Plaintiff

has not shown, and cannot show, that the DPF is covered by the Warranty at issue, he has not

alleged any breach of that warranty.  For this reason, he has failed to satisfy the third element

required to state a breach of express warranty claim.

### d.     Mr. Shaaya's Allegations of Injury are Insufficient

The fourth prong of a breach of express warranty claim requires plaintiffs to establish an

injury that was "proximately caused by the breach."  *Ziff-Davis*, 553 N.E.2d at 1003.  Here,

because Mr. Shaaya never adequately alleges a breach of the Warranty, he necessarily cannot

establish an injury proximately caused by any alleged breach.

Mr. Shaaya alleges that his vehicle was repaired and that, in or about November 2018, he

tendered $3,122.98 in out-of-pocket payments in connection with repairs to the DPF.  (ECF No.

24, ¶ 11).  He alleges that he was "denied warranty coverage," which makes sense because *the

DPF does not fall within the scope of the Warranty*.  *See* Paragraph C, *supra*.  He has not shown,

however, that this denial constituted a breach that caused him injury.  Mr. Shaaya further alleges

that, in or about February 2019, the DPF malfunctioned once again thereby requiring him to

16

bring his vehicle to the Land Rover Manhattan dealership for service. (*Id.*, ¶ 12).  Mr. Shaaya alleges no injury whatsoever in connection with the February 2019 service.  On the contrary, he claims that the DPF was replaced "under warranty." (*Id.*)[5]

Because Mr. Shaaya has failed to sufficiently allege even a single one of the prongs necessary to sustaining a cause of action pursuant to N.Y. U.C.C. § 2-313, this Court should dismiss Count II of the Amended Complaint.

  **2.**  **Plaintiff Freiburghouse's Claim for Breach of Express Warranty Under California Law Should be Dismissed (Count IX)**

Like Mr. Shaaya, Mr. Freiburghouse asserts a claim for breach of express warranty on the theory that JLRNA is liable because it somehow breached the Warranty.  (ECF No. 24, ¶ 159). Mr. Freiburghouse's claim for breach of express warranty under California Commercial Code § 2-313 must be dismissed because, like Mr. Shaaya, he has failed to allege facts sufficient to satisfy the *prima facie* elements of that claim.

It is well-settled under California law that, in order "[t]o prevail on a breach of express warranty claim, a plaintiff must prove that the seller (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Asghari v. Volkswagen Grp. Of America, Inc.*, 42 F. Supp. 3d 1306, 1333 (C.D. Cal. 2013) (internal quotations omitted).  Moreover, in California "the general rule is that privity of contract is ***required*** in an action for breach of either express or implied warranty." *Yu-Santos v. Ford Motor Co.*, No. 06-cv-1773, 2009 WL 1392085, at *20-21 (E.D. Cal. May 14, 2009) (internal quotations omitted) (emphasis added).  To that end, a plaintiff asserting a claim for

---

[5] Mr. Shaaya is likely mistaken about this, but for purposes of this Motion his allegation that it was replaced "under warranty" is accepted as true.

breach of warranty "must stand in 'vertical privity' with the defendant." *Id.* (quoting *Kennedy v. Baxter Healthcare Corp.*, 43 Cal.App. 4th 799, 810-11 (1996)).  Parties are in "vertical privity" where they "occupy adjoining links in the distribution chain."  *Kennedy*, 43 Cal.App. 4th at 810-11.

      a.      **<u>Plaintiff Freiburghouse Cannot Satisfy the Threshold Privity Requirement</u>**

As a threshold matter, Mr. Freiburghouse's claim fails because he cannot allege that he is in vertical privity with JLRNA merely by purchasing his vehicle from Penske Jaguar Land Rover in Cerritos, California.  Under analogous facts, California courts have dismissed breach of express warranty claims.  *See Yu-Santos*, 2009 WL 1392085, at *21 (dismissing express warranty claim because it was "undisputed that Plaintiff did not  . . . purchase her vehicle from Defendant.  Thus, the chain of distribution was Defendant to Ford, Ford to car dealer, and car dealer to Plaintiff.  Plaintiff and Defendant do not occupy adjoining links in this chain as they are separated by at least two links."); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023-24 (9th Cir. 2008) (upholding trial court's dismissal of implied warranty claim of plaintiff suing auto manufacturer for allegedly defective head gaskets, finding that "an end consumer . . . who buys from a retailer is not in privity with a manufacturer."); *Corson v. Toyota Motor Sales, U.S.A., Inc.*, No. 12-cv-08499, 2013 WL 1802709, at *9-10 (C.D. Cal. Apr. 24, 2013) (holding that, under analogous New York law, plaintiffs who purchased vehicles from authorized dealerships were not in privity with vehicle manufacturers).  Thus, Plaintiff Freiburghouse's express warranty claim must be dismissed.

18

**b.**     **Plaintiff Freiburghouse Has Not Alleged Facts Sufficient to State a Claim For Breach of Express Warranty Under California Law**

Even if the Court were to consider the merits of Mr. Freiburghouse's allegations, his claim still fails.  Among other things, he has not alleged that JLRNA actually breached any express warranty, nor that he has suffered any damage as a result of any breach.  In California, as in New York, "design defects fall outside the scope of a warranty covering defects in material and/or workmanship."  *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 928 (C.D. Cal. 2013).  Thus, Mr. Freiburghouse's express warranty claim fails for all the reasons discussed in Paragraph C, *supra*; like Mr. Shaaya, he cannot claim the defect in his vehicle was even within the Warranty.  Similarly, Mr. Freiburghouse has not alleged how JLRNA breached the Warranty.  To the contrary, he actually alleges that he "was not charged for the above servicing and repairs" to his vehicle.  (ECF No. 24, ¶ 16).  These allegations fall woefully short of California's requirement that "in order to plead a cause of action for breach of express warranty, one must allege ***the exact terms of the warranty*** . . . and a breach of that warranty which proximately causes plaintiff injury."  *Kearney v. Hyundai Motor Am.*, No. 90-1298, 2010 WL 8251077, at *7 (C.D. Cal. Dec. 17, 2010) (emphasis added).

 Not only has Mr. Freiburghouse failed to allege how he claims JLRNA breached this warranty, but he has failed to allege how he was injured by any alleged breach.  Lacking facts sufficient to satisfy these critical elements, his express warranty claim must be dismissed.

**D.**     **Plaintiffs' Implied Warranty Claims Should be Dismissed**

**1.**     **Plaintiff Shaaya's Claim for Breach of Implied Warranty of Merchantability Under N.Y. U.C.C. § 2-314 (Count III) Should be Dismissed**

A claim for a breach of an implied warranty under New York law is governed by N.Y. U.C.C. § 2-314.  That section provides, in pertinent part, that "a warranty that the goods shall be

merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  N.Y. U.C.C. § 2-314(1); *see also Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 530 (E.D.N.Y. 2012).  "Further, the UCC provides that to be merchantable, the goods must be: (1) fit for the ordinary purpose for which they are used; (2) capable of passing without objection in the trade under the contract description; and (3) of fair and average quality for such goods."  *Jackson*, 845 F. Supp. 2d at 530-31 (citing N.Y. U.C.C. § 2-314(2)(c)).

New York courts have made clear that "absent any privity of contract between Plaintiff and Defendant, a breach of implied warranty claim cannot be sustained as a matter of law." *Gould v. Helen of Troy Ltd.*, 2017 WL 1319810, at *7 (S.D.N.Y. Mar. 30, 2017); *see also Haag*, 969 F. Supp. 2d at 316-17; *Aracena v. BMW of N. Am., LLC*, 159 A.D.3d 664, 666 (N.Y. App. Div. 2018) (holding that there is no privity between a consumer purchasing a vehicle from a dealership and the vehicle manufacturer).  Here, Mr. Shaaya alleges only that he leased a new 2018 Land Rover HSE from Land Rover Manhattan, an entity *other than* JLRNA.  (ECF No. 24, ¶ 9).  As the Appellate Division's holding in *Aracena* made clear, entering into a contract with a dealership does not automatically create privity between the consumer and the manufacturer. *Aracena*, 159 A.D.3d at 666.  Mr. Shaaya's failure to plead privity with JLRNA is therefore fatal to his implied warranty claim.

Furthermore, with respect to implied warranty claims in the motor vehicle context, "it has been held that the 'ordinary purpose' to which the implied warranty speaks is 'to enable the purchaser to transport herself upon the streets and highways . . . in a reasonably safe manner.'" *Jackson*, 845 F. Supp. 2d at 531 (quoting *Enobakhare v. Carpoint, LLC*, 2011 WL 703920, at *9 (E.D.N.Y. Jan. 10, 2011)).  Under New York law, the "ordinary purpose" of a motor vehicle is recognized to be for use as transportation.  *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F.

20

Supp. 2d 519, 541 (E.D.N.Y. 2006).  While Mr. Shaaya claims to have discovered the alleged

defects shortly after obtaining his vehicle, he does not allege that he stopped driving his vehicle

altogether or that his vehicle is unfit for transportation.  On the contrary, Mr. Shaaya suggests

that he continues to use his vehicle, alleging that he "has continued to experience the DPF Defect

since this repair."  (ECF No. 24, ¶ 12).

Mr. Shaaya's continued use of his Jaguar vehicle proves it is fit for transportation and

therefore "merchantable," notwithstanding the allegations of a defect.  *See, e.g.*, *Chiarelli v.*

*Nissan N. Am, Inc.*, 2015 WL 5686507, at *8 (E.D.N.Y. Sept. 25, 2015) (dismissing an implied

warranty claim where plaintiffs' own allegations established that they continued to operate their

vehicles thereby compelling the conclusion that the vehicles were fit for their intended

purposes); *Szymczak v. Nissan N. Am*, *Inc.*, 2011 WL 7095432 at *11 (S.D.N.Y. Dec. 16, 2011)

(dismissing plaintiffs' implied warranty claims when they had driven their vehicles without

incident for four years); *Suddreth v. Mercedes-Benz, LLC*, 2011 WL 5240965, at *5 (D.N.J. Oct.

31, 2011) (holding that it "is simply not plausible that a motor vehicle could be classified as not

merchantable when it had been used for its intended purpose for four years").  Accordingly, this

Court should dismiss Mr. Shaaya's implied breach of warranty claim.

### 2. **Plaintiff Freiburghouse's Claim for Breach of Implied Warranty of Merchantability Pursuant to the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § § 1792 and 1791.1 *et seq.* (Count X) Must Be Dismissed**

Mr. Freiburghouse's claim for breach of implied warranty of merchantability likewise

fails.  Like those in New York, California courts impose a vertical privity requirement to implied

warranty claims.  *See, e.g., Sherman v. Stryker Corp.*, No. 09-224, 2009 WL 2241664, at *3

(C.D. Cal. Mar. 30, 2009).  A purchaser who buys a vehicle from a retailer is not in privity of

contract with the manufacturer of that vehicle.  *Clemens*, 534 F.3d at 1023; *see also Long v.*

*Graco Children's Products, Inc.*, No. 13-1257, 2013 WL 4655763, at *12 (N.D. Cal. Aug. 26, 2013); *Kent v. Hewlett-Packard Co.*, No. 09-5341, 2010 WL 2681767, at *4 (N.D. Cal. July 6, 2010). Thus, Mr. Freiburghouse cannot satisfy this threshold requirement, warranting the dismissal of his claim.

Plaintiff Freiburghouse's claim also fails because the Amended Complaint contains no facts showing that his vehicle was unmerchantable. An implied warranty does not guarantee that goods be free of all defects. *Kent*, 2010 WL 2681767, at *4 (citing *Am. Suzuki Motor Corp. v. Super. Ct.*, 37 Cal. App. 4th 1291, 1295 (1995)). Thus, [t]he mere manifestation of a defect by itself does not [] breach the implied warranty of merchantability. Instead, there must be a fundamental defect that renders the product unfit for its ordinary purpose." *Tietsworth v. Sears, Roebuck & Co.*, No. 09-288, 2009 WL 3320486, at *12 (N.D. Cal. Oct. 13, 2009).

Here, Mr. Freiburghouse concedes that his vehicle fulfilled its "ordinary purpose" of providing transportation. He purchased that vehicle in December 2016 and had no service issues until August 2020. (ECF No. 24, ¶¶ 14-15). At that time, his vehicle was repaired, at no cost to him, and he continues to drive that vehicle to the present. *Id*. Under such circumstances, where the product at issue has served its ordinary purpose, and the facts alleged show that the plaintiff has used and continues to use the product notwithstanding any alleged defect, a claim for breach of implied warranty fails as a matter of law. *See Am. Suzuki*, 37 Cal. App. 4th at 1298-99; *see also Kent*, 2010 WL 2681767, at *4; *Tietsworth*, 2009 WL 3320486, at *12.

E.   **Plaintiffs' Claim Under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (Count V) Should Be Dismissed**

Plaintiffs assert a cause of action pursuant to the Magnuson-Moss Warranty Act ("MMWA"). (ECF No. 24, ¶¶ 113-23). The MMWA provides a federal cause of action for breaches of written or implied warranties under state law and does not provide an independent

cause of action for state law claims.  "To state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law." *Cummings*, 401 F. Supp. 3d at 314 (citing *Garcia*, 127 F. Supp. 3d at 232).  "To that effect, claims under the MMWA stand or fall with the express or implied warranty claims under state law." *Cummings*, 401 F. Supp. 3d at 314 (citing *Cali v. Chrysler Grp. LLC*, No. 10-cv-7606, 2011 WL 383952, at *4 (S.D.N.Y. Jan. 18, 2011)); *see also Gould v. Helen of Troy Ltd.*, No. 16-cv-2033, 2017 WL 1319810, at *5 (S.D.N.Y. Mar. 30, 2017) ("Claims under the [MMWA] stand or fall with the express or implied warranty claims under state law").

As discussed above, Plaintiffs' breach of express and implied warranty claims under New York and California law, respectively, are legally insufficient.  Because Plaintiffs' state law express and implied warranty claims fail, their MMWA claim must fail too.

### F.   Plaintiffs' Fraudulent Omission Claim (Count IV) Should be Dismissed

The common-law fraud claims asserted by both Plaintiffs must be dismissed because they have not pled facts supporting that claim with the specificity required by Fed.R.Civ.P. 9(b).[6]

Under New York law, a plaintiff bringing a claim for fraudulent omission must allege facts sufficient to satisfy four elements: (1) a material omission; (2) the intent to defraud; (3) reasonable reliance on the part of the plaintiff; and (4) damages resulting from the reliance.  *See, e.g., Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 218 (S.D.N.Y. 2007), *aff'd*, 354 Fed.App'x 496 (2d Cir. 2009).  New York federal courts have generally held that the heightened pleading standards of Rule 9(b) apply to fraudulent omission claims.  *Id*.

---

[6] Because Plaintiffs assert statutory claims under both New York and California law elsewhere in the Amended Complaint, JLRNA applies the law of these states to analyze their common law claims for fraudulent omission and unjust enrichment.  In doing so, JLRNA makes no admission as to what substantive law governs this case and does not waive any arguments or defenses available under the laws of any applicable jurisdiction.

Furthermore, in cases where "the alleged fraud consists of an omission and the plaintiff is unable to specify the time and place because no act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclosure; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud." *Odyssey Re(London) Ltd. v. Stirling Cook Browne Holdings, Ltd.*, 85 F. Supp. 2d 292, 293 (S.D.N.Y. 2000), *aff'd*, 2 Fed. App'x 109 (2d Cir. 2001).

Similarly, California law requires that a plaintiff allege facts sufficient to support that: "(1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the fact and would have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Jordan v. Paul Financial, LLC*, 285 F.R.D. 435, 454 (N.D. Cal. 2012) (internal citations omitted).   And, as in New York, California courts have held that the heightened pleading standards of Rule 9(b) apply to claims for fraudulent omission, requiring that "plaintiff must describe the content of omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations ***that plaintiff relied on to make her purchase*** and that failed to include the allegedly omitted information." *Eisen v. Porsche Cars North America, Inc.*, No. 11-9405, 2012 WL 841019, at *2 (C.D. Cal. Feb. 22, 2012) (dismissing fraudulent omission claim as inadequately pled under Rule 9(b)) (emphasis added).

1.     **Plaintiffs Have Not Alleged Their Fraud Claims With the Requisite Particularity Required By Rule 9(b)**

Neither Mr. Shaaya nor Mr. Freiburghouse has alleged facts sufficient to satisfy these requirements. Neither Plaintiff identifies any communications they had with JLRNA *at all*, much less any specific JLRNA statements that allegedly omitted information about the purported DPF defect in their vehicles. Instead, each Plaintiff makes the same vague allegations that they "spoke with [a] dealer sales representative" and "viewed the Monroney sticker posted on the side window of the vehicle." Am Compl., ¶¶ 9, 14. These scant allegations, which do not identify the "sales representatives," nor precisely when or where these conversations occurred, the specific content of the conversations, or any specific facts that were allegedly omitted, are insufficient to satisfy Rule 9(b). Moreover, Plaintiffs fail to allege facts sufficient to support an inference that alleged statements or omissions of "sales representative[s]" – presumably dealership employees – can be attributed to JLRNA. *See Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 121 (E.D.N.Y. 2011); *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 216 (S.D.N.Y. 2007) (dismissing fraudulent omission claim in part where plaintiff failed to disclose the name of the sales representative who allegedly failed to disclose facts as insufficient under Rule 9(b)); *see also Eisen*, 2012 WL 841019, at *3 (dismissing California fraudulent omission claim as insufficiently pled); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (dismissing omission-based fraud claim under Rule 9(b) because plaintiff failed to "articulate the who, what, when, where, and how of the misconduct alleged.").

Plaintiffs' failure to identify exactly what JLRNA omitted is particularly problematic given that Plaintiffs have asserted various competing theories of defect, ranging from allegations about the vehicles' DPF filters to the warning light systems, the regeneration process required to clean the DPF, alleged loss of power and engine fires, and the vehicles' diesel fluid tanks and

diesel exhaust fluid injectors.  Plaintiffs fail to allege what information about any of these various components JLRNA was required, yet failed, to disclose.  This alone compels the dismissal of their fraud claims.  *See Odyssey Re (London) Ltd.,* 85 F. Supp. 2d at 293; *Kearns,* 567 F.3d at 1126.[7]

Courts in both New York and California have made clear that plaintiffs asserting claims for fraudulent omission, especially in the context of auto sales, *must* allege the circumstances of the omission sufficient to satisfy Rule 9(b); failure to do so warrants dismissal.  *See Weaver,* 172 F.R.D. at 102 ("[t]o identify the context in which the omission . . . was made and the manner in which it misled, Plaintiff would have to specifically identify the representations, advertisements, and promotional materials that omitted the reference to the [alleged defect], misled him, and upon which he relied."); *see also Eisen,* 2012 WL 841019, at *3 (dismissing California fraudulent omission claim because plaintiff failed to describe "the content of the omission and where the omitted information should or could have been revealed . . . [or] provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase that failed to include the allegedly omitted information.") (internal citations omitted).

## 2. Plaintiffs Have Not Sufficiently Alleged That JLRNA Owed a Duty to Disclose

Under New York law, "a claim of fraud based on fraudulent omission can be maintained *only* when there is a duty of disclosure."  *Morin v. Trupin,* 711 F. Supp. 97, 103 (S.D.N.Y.

---

[7] Plaintiffs' offhand mention of the "Monroney sticker" is equally irrelevant because the categories of information to be included in that label are prescribed by law and do not include advisories or information about potential vehicle defects.  *See* 15 U.S.C. § 1232 (delineating label and entry requirements).  It is insufficient to allege JLRNA omitted information which the law does not require to be disclosed on this label.

1989).  Such a duty to disclose arises only where the parties enjoy a fiduciary relationship or where "one party possesses superior knowledge, *not readily available to the other*, and knows that the other is acting on the basis of mistaken knowledge." *Id.* at 109 (emphasis added).  New York courts have referred to this as the "special facts" doctrine, and have noted the doctrine requires satisfaction of a two-prong test: first that the material fact is "peculiarly within the knowledge of one party" and, second, that it could not have been discovered through the "exercise of ordinary intelligence" by the other party. *Jana L. v. West 129th St. Realty Corp.*, 322 A.D.3d 274, 278 (N.Y. App. Div. 2005) (citing *Schumaker v. Mather*, 30 N.E. 755 (N.Y. 1892) ("if the one party has the means available to him of knowing . . . he must use those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentation.")).  Courts will not find that a defendant possessed "superior knowledge" when the information was a matter of public record or was readily available to the plaintiff.  *See, e.g., Wildman & Bernhardt Const., Inc. v. BPM Assocs., LP*, 273 A.D.2d 38 (N.Y. App. Div. 2000); *see also Slavin v. Hamm*, 210 A.D.2d 831 (N.Y. App. Div. 1994).  Here, Plaintiff Shaaya's claim fails under New York law because first, he alleges that the purported defect was both widely-known and widely-discussed amongst the public before his purchase; and, second, he freely concedes that he failed to conduct any sort of pre-purchase diligence, which might have cued him to inquire with the dealership where he purchased his vehicle.  (ECF No. 24, ¶¶ 9, 52).  Thus, he cannot establish that JLRNA had a duty to disclose, rendering his claim fatally deficient.

Similarly, for fraudulent omission claims in the context of automotive warranty claims, California courts have generally held that "[a] manufacturer's duty to consumers [to disclose] is limited to its warranty obligations absent either an affirmative misrepresentation or a safety

issue." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012). This specificity requirement derives from the recognition that allegations "that Defendants knowingly concealed material defects in a product from purchasing consumers [] are grounded in fraud and are subject to the heightened pleading requirements of Rule 9(b)." *Meserole v. Sony Corp. of America, Inc.*, No. 08-8987, 2009 WL 14003933, at *4 (S.D.N.Y. May 19, 2009) (examining California law). Here, Mr. Freiburghouse does not allege any affirmative misrepresentations and therefore must allege the existence of a safety issue to trigger JLRNA's duty to disclose. However, Plaintiffs make only vague allegations that the "DPF Defect poses an extreme and unreasonable safety hazard to drivers . . . because a clogged DPF can cause sudden and unexpected loss of power . . . [or] substantially raise[] the risk of a vehicle fire because the engine and various components of the vehicle's undercarriage can become extremely hot." (ECF No. 24, ¶ 3). California courts have held, however, that where there are "no factual allegations that any named Plaintiff or any identifiable number of the putative class actually experience a malfunction," such allegations are insufficient to demonstrate a "safety issue" such that the defendant is under a duty to disclose. *Tietsworth*, 2009 WL 3320486, at *5. Thus, like Mr. Shaaya, Mr. Freiburghouse has failed to allege facts sufficient to satisfy the "duty to disclose" element of his fraudulent omission claim.

### G.   Plaintiffs' Statutory Fraud and Consumer Protection Claims Should be Dismissed

#### 1.   Plaintiff Shaaya's N.Y. G.B.L. § 349 Claim (Count I) Remains Insufficiently Pled and Should be Dismissed

The new allegations Mr. Shaaya asserts in the Amended Complaint fail to redeem his fatally-deficient claim under New York General Business Law ("N.Y. G.B.L.") § 349. In order to proceed on an omission-based claim under § 349, a plaintiff "must allege facts plausibly suggesting that (a) Defendant **alone** possessed material information about the defect, and (2) *[sic]* Defendant failed to provide that information to [him] and other consumers." *Cummings,*

401 F. Supp. 3d at 307 (emphasis added).  Plaintiff Shaaya cannot satisfy this requirement and therefore his claim must be dismissed.

**a.**     **Plaintiff Fails to Allege Any Acts or Omissions by JLRNA in New York**

While Plaintiff seeks to hold JLRNA liable under the New York General Business Law, he entirely fails to identify any alleged acts or omissions *by JLRNA* that occurred *within* New York.  *See* N.Y. G.B.L. § 349 (deeming unlawful deceptive acts or practices committed "in this state"); *see also Syzmacl,* 2011 WL 7095432, at \*12 (discussing legislative history of § 349 as intending to address commercial misconduct occurring within New York).  Courts have routinely dismissed § 349 claims where plaintiffs could not cure this deficiency.  *See, e.g., Nardella v. Braff*, 621 F. Supp. 1170, 1173 (S.D.N.Y. 1985); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N.Y. 1997).  To the extent Plaintiff's claim is premised upon his interactions with an unidentified "dealer sales representative" at Land Rover Manhattan in New York, New York, he has not alleged how the statements or alleged omissions of a "sales representative" – presumably the employee of a dealership – can be imputed to JLRNA.  *See Woods*, 807 F. Supp. 2d at 121 (dismissing fraudulent misrepresentation claim against product manufacturer based upon statements allegedly made by the sales representative of a third-party seller because the complaint was "wholly lacking facts concerning the relationship between the [manufacturer defendant] and the [seller] from which the Court can infer the existence of an agency relationship" and concluding that "[t]he mere fact that [the seller] sold [the manufacturer's] product does not plausibly support a finding that [the seller] was acting as [the manufacturer's] agent.").

### b.    Plaintiff Does Not Allege That JLRNA *Alone* Possessed Information About the Purported Defect

Courts interpreting § 349 claims based upon alleged omissions have consistently required that a plaintiff "allege facts plausibly suggesting that. . . Defendant **alone** possessed material information about the defect" and nonetheless failed to disclose that information to plaintiff and other consumers.  *Cummings*, 401 F. Supp. 3d at 307 (emphasis added); *see also Kommer v. Ford Motor Co.*, No. 1:17-cv-296, 2017 WL 3251598, at *4 (N.D.N.Y. July 28, 2017); *Dixon v. Ford Motor Co.*, No. 14-cv-6135, 2015 WL 6437612, at *8 (E.D.N.Y. Sept. 30, 2015); *Bildstein v. MasterCard Int'l., Inc.*, No. 03-cv-9826I, 2005 WL 1324972, at *4 (S.D.N.Y. June 6, 2005). This requirement derives from the understanding that § 349 "surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation."  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E. 2d 741, 745 (N.Y. 1995).  As the Court in *Oswego Laborers* noted, "[t]he scenario is quite different, however, where the business **alone** possesses material information that is relevant to the consumer and fails to provide this information."  *Id.* (emphasis added).

This is not the case.  Plaintiffs actually allege that the DPF defect was widely known and discussed by consumers.  Specifically, they allege that JLRNA had notice of the purported defect, *inter alia*, because of "public complaints" and "articles," including an "online forum" where, they allege, customers posted "over one hundred comments" concerning "DPF-related issues" predating Mr. Shaaya's date of lease by more than a full year.  (ECF No. 24, ¶ 52).  In short, Mr. Shaaya cannot proceed on an omission-based claim under § 349 because JLRNA was not in exclusive possession of knowledge of the purported defect.  Furthermore, had Plaintiff Shaaya conducted any of the pre-purchase diligence required of him by New York law, he could

have apprised himself of these apparently public complaints and inquired about the vehicle's

DPF system at the time of purchase. (*See id.*, ¶ 9).

**c.**     **Plaintiff Shaaya Does Not Allege That JLRNA's Purported Omissions Render Any Other Statements JLRNA Made Misleading**

Equally warranting dismissal of Plaintiff Shaaya's § 349 claim is his continued failure to

allege how and why any alleged omission by JLRNA rendered other statements made by it

misleading.  This is another required element for omission-based claims under § 349.  *Henry v.*

*Rehab Plus, Inc.*, 404 F. Supp. 2d 435, 445 (E.D.N.Y. 2005) (noting that "an omission becomes a

misrepresentation [for purposes of § 349] *only* in a situation in which it renders other statements

made by a defendant misleading.") (emphasis added).

Mr. Shaaya does not allege that he ever read or saw *any* statement made by JLRNA prior

to purchasing his vehicle, much less one that might somehow have been rendered misleading by

whatever vague "facts" he claims JLRNA omitted.  When presented with similar shortcomings,

New York federal courts have repeatedly dismissed § 349 claims at the pleading stage.  *See*

*Quintana v. B. Braun Med. Inc.*, No. 17-cv-6614, 2018 WL 3559091, at *9-10 (S.D.N.Y. July

24, 2018) (dismissing claim under § 349 because plaintiff's allegations "[did] not suggest

Plaintiff ever saw these statements and under what circumstances[.]"); *Stoltz v. Fage Dairy*

*Processing Ind., S.A.*, No. 14-cv-3826, 2015 WL 5579872, at *22 (E.D.N.Y. Sept. 22, 2015)

(same); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.,* 8 F. Supp. 3d 467, 480

(S.D.N.Y. 2014) (same).  No different outcome is warranted here.

**2.**     **Plaintiff Freiburghouse's Claim for Violation of the California Consumer Legal Remedies Act (Count VII) Should be Dismissed**

Mr. Freiburghouse alleges a violation of the California Consumers Legal Remedies Act,

Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"), by virtue of his claims that JLRNA knew of the

31

alleged DPF Defect and concealed the alleged defect.  (ECF No. 24, ¶¶ 130-42).  "In order to establish standing to assert a CLRA, a Plaintiff must establish that he suffered an actual injury as a result of defendant's alleged misconduct."  *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1228 (C.D. Cal. 2010) (citing *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959-60 (9th Cir. 2009)).  Additionally, a plaintiff suing under the CLRA pursuant to a theory of omission must sufficiently allege that a defendant omitted material facts "contrary to a representation actually made by the defendant, or an omission of fact the defendant was obliged to disclose."  *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1024 (N.D. Cal. 2016).  Here, Mr. Freiburghouse fails entirely to allege that he suffered an actual injury by virtue of JLRNA's alleged misconduct or that JLRNA omitted material facts either contrary to a prior representation, or which it were obliged to disclose.

> a.   **Plaintiff Freiburghouse Lacks Standing to Pursue a CLRA Claim**

As discussed in Section B, *supra*, Mr. Freiburghouse lacks Article III standing to assert any of his claims, as he fails to allege an injury-in-fact.  His lack of standing is perhaps most evident in the context of his CLRA claim.

California courts have held that, in order to sustain a CLRA claim for concealed defects in the automotive context, a plaintiff must establish that (1) "[his] vehicle[] ha[s] manifested the alleged defect," and (2) that he was "forced to replace [his] vehicle[] after learning of the alleged defect or that [he] incurred [some form of] out-of-pocket damages."  *Contreras v. Toyota Motor Sales USA, Inc.*, No. 09-6024, 2010 WL 2528844, at *6 (N.D. Cal. June 18, 2010), *rev'd on other grounds*, 484 F. App'x 116 (9th Cir. 2012).  In *Contreras*, plaintiffs alleged a brake-assist defect in certain Toyota vehicles and claimed Toyota's failure to disclose the alleged defect violated the CLRA.  *Id.* at *2.  As here, the *Contreras* plaintiffs did not allege any out-of-pocket

damages.  *Id.*  Ultimately, the *Contreras* court dismissed the CLRA claim due to plaintiffs'

failure to allege out-of-pocket damages, and upon determining that "plaintiffs' allegation that

their vehicles are worth substantially less than they would be without the alleged defect is

"conclusory."  *Id.* at *6; *see also Whitson v. Bumbo*, No. 07-5597, 2009 WL 1515597, at *5

(N.D. Cal. Apr. 16, 2009) (dismissing a CLRA claim for lack of standing where the plaintiff

failed to allege out-of-pocket damages and rejecting plaintiff's "benefit of the bargain" theory).

Here, Mr. Freiburghouse fails to allege any out-of-pocket or other actual damages by

virtue of JLRNA's alleged misrepresentations and cannot rely on a benefit of the bargain theory

of damages.  Accordingly, Mr. Freiburghouse lacks standing to pursue a CLRA claim.

> **b.      Plaintiff Freiburghouse Fails to Allege Facts Sufficient to Support His Omission-Based Theory of Liability Under the CLRA**

Even if Mr. Freiburghouse had standing to pursue a CLRA claim, that claim must still be

dismissed because he fails to plead sufficient facts to proceed on his omission-based theory

under the CLRA.  Plaintiff fails to identify how or why any omission is contrary to any other

representation made by JLRNA.  Therefore, in order to proceed on this claim, Mr. Freiburghouse

would have to allege facts sufficient to show that JLRNA was obliged to disclose information

about the purported defect and failed to do so.  This element is virtually identical to the "duty to

disclose" element discussed with respect to Plaintiff's fraudulent omission claim, discussed in

Section F, *supra*.  As the courts have recognized, "[w]hen analyzing a UCL, CLRA, or

fraudulent concealment claim, California law instructs that a manufacturer's duty to consumers

is limited to its warranty, unless a safety issue is present or there has been some affirmative

misrepresentation."  *Gray v. Toyota Motor Sales, U.S.A., Inc.,* 554 F. App'x 608, 609 (9th Cir.

2014) (quoting *Daugherty v. Am. Honda Motor Co.,* 144 Cal.App.4th 824, 834-35 (2006)).

Nonetheless, Mr. Freiburghouse makes only vague allegations about *possible* safety

hazards – without alleging that the vehicles of Plaintiffs, or any other putative class member

actually suffered from the vague "hazards" described.  *See* ECF No. 24, ¶ 3.  To the contrary,

Mr. Freiburghouse alleges merely that his "check engine light illuminated," prompting him to

have his vehicle serviced and repaired – at no cost to him.  (ECF No. 24, ¶ 15).  This

shortcoming is fatal to his CLRA claim and requires its dismissal.

    In short, Plaintiff has not shown, nor can he, that a legitimate "safety risk" existed such

that JLRNA was under a duty to disclose.  This is fatal to his CLRA claim.

       **3.**      **Plaintiff Freiburghouse's Claim Under California's Unfair
Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (Count VIII)
Should be Dismissed**

    Like § 349 of New York's General Business Law, Cal. Bus. & Prof. Code § 17200

("UCL") serves to prohibit "any unlawful, unfair or fraudulent business act or practice[.]"  In the

context of omission-based UCL claims, courts have imposed the same requirement as under the

CLRA – that a plaintiff must identify an " omission. . . contrary to a representation actually made

by the defendant, or an omission of a fact that the defendant was obliged to disclose."  *Sud v.

Costco Wholesale Corp.,* 229 F. Supp. 3d 1075, 1085 (N.D. Cal. 2017) (quoting *Daugherty,* 144

Cal.App.4th at 835); *see also Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136, 1141 (9th Cir.

2012) (holding that analogous fraudulent omission claim concerning latent defect not actionable

unless the omission is contrary to a representation actually made or an omission of fact the

defendant was obliged to disclose).

    Thus, for all the reasons discussed above with respect to Mr. Freiburghouse's CLRA

claim, so too must his UCL claim fail.

**H.**     **Plaintiffs' Unjust Enrichment Claim (Count VI) Should be Dismissed**

Regardless of whether New York or California law is applied, the end result is the same: Plaintiffs' claim for unjust enrichment must be dismissed as well.

"Courts have consistently held that unjust enrichment is not a proper cause of action under California law" because it "does not describe a theory of recovery, but an effect: the result of a failure to make restitution where it is equitable to do so." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1194 (C.D. Cal. 2010) (collecting cases dismissing claims for unjust enrichment); *see also MB Technologies, Inc. v. Oracle Corp.*, No. 09-05988, 2010 WL 1576686, at *4 (N.D. Cal. Apr. 19, 2010) (examining California's law of unjust enrichment and concluding that "unjust enrichment represents a form of relief rather than an independent claim."). Thus, to the extent the Court applies the laws of California, this claim must be dismissed because California does not recognize a standalone cause of action for unjust enrichment.

Similarly, under New York law, "unjust enrichment is not a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 967 N.E. 2d 1177, 1182 (N.Y. 2012) (citations omitted). Thus, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.* Instead, it is available "only in unusual situation when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from defendant to plaintiff[.]" *Id.*

Here, Plaintiffs make only conclusory allegations which fail to adequately describe how they claim JLRNA was unjustly enriched. Plaintiffs vaguely allege that JLRNA "profited through the sale and lease of the Class Vehicles" and that it "has been unjustly enriched due to the known DPF Defect in the Class Vehicles through the use money paid that earned interest or

35

otherwise added to Defendant profits when said money should have remained with Plaintiffs" – whatever that may mean.  (ECF No. 24, ¶¶ 126, 128).  To the extent Plaintiffs suggest they were somehow induced to purchase their vehicles, courts have routinely dismissed similar unjust enrichment claims on analogous facts, where plaintiffs assert competing claims on the basis that they incurred expenses or overpaid due to a defendant's alleged misrepresentations.  *See, e.g., Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290-91 (S.D.N.Y. 2014) (dismissing unjust enrichment claim on the same basis); *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 524-25 (S.D.N.Y. 2015) (dismissing unjust enrichment claim as duplicative of claims under N.Y. G.B.L. § 349 and for fraud).  Importantly, these courts noted that, even if the other duplicative claims are dismissed, an unjust enrichment claim must still be dismissed because "the unjust enrichment claim would not remedy the defects because of the similarity in the underlying allegations."  *Id*. at 524; *Corsello*, 967 N.E.2d at 1182 (same).

Plaintiffs allege further that JLRNA was somehow unjustly enriched because "Plaintiffs [] have vehicles that require repeated, high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Defendant."  (ECF No. 24, ¶ 127).  This theory misses the mark for at least two reasons.  First, Plaintiffs have asserted separate breach of warranty claims for the recovery of any expenses they claim to have paid in connection with repairs performed on their vehicles – rendering the unjust enrichment claim duplicative and warranting its dismissal. Second, Mr. Freiburghouse freely concedes that he has not incurred *any* out-of-pocket expenses with respect to his vehicle's repair.  (ECF No. 24, ¶ 15) ("Penske Land Rover ultimately agreed to cover this cost as goodwill when Mr. Freiburghouse protested.").  Similarly, while Mr. Shaaya alleges he was required to "pay $3,122.98 out-of-pocket" to Land Rover Manhattan for the initial repair of his vehicle, he makes no allegations to establish how payments rendered to this

36

dealership somehow pass through to JLRNA as the manufacturer of the vehicle, such that JLRNA was "unjustly enriched."

In light of these many deficiencies, the Court should dismiss Plaintiffs' unjust enrichment claim.

## <u>CONCLUSION</u>

When their confusing and contradictory allegations are parsed, it becomes clear that Plaintiffs have failed to adequately allege the elements of any of the ten causes of action they plead.   Moreover, Plaintiff Freiburghouse lacks standing to bring any claims whatsoever. Accordingly, Defendant JLRNA respectfully requests that the Court grant its Motion to Dismiss the Amended Complaint, as well as such further relief as it deems just and proper.


Dated:  October 2, 2020

**DUANE MORRIS LLP**

*/s/ Dana B. Klinges*
Dana B. Klinges, Esq.
30 South 17th Street
Philadelphia, PA 07102-5429
(215) 979-1000

Matthew M. Caminiti, Esq.
One Riverfront Plaza
1037 Raymond Boulevard, Suite 1800
Newark, NJ 07102-5429
(973) 424-2000

*Attorneys for Defendant*
*Jaguar Land Rover North America LLC*
