**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DAOUD SHAAYA and MARK FREIBURGHOUSE, individually and on behalf of a class of all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>JAGUAR LAND ROVER NORTH AMERICA LLC,<br><br>                    Defendant. | Civil Action No.: 2:20-cv-5679<br><br>**OPINION** |

**CECCHI, District Judge.**

This matter comes before the Court on Defendant Jaguar Land Rover North America LLC's ("Defendant") motion to dismiss (ECF No. 30) the First Amended Class Action Complaint (ECF No. 24 ("FAC")) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). After reviewing the submissions made in support of and in opposition to the instant motion (ECF Nos. 34 ("Opp."), 35 ("Reply")), and for the reasons set forth below, Defendant's motion is granted in part and denied in part.

## I.      BACKGROUND

Plaintiff Daoud Shaaya ("Shaaya"), a New York citizen, and Plaintiff Mark Freiburghouse ("Freiburghouse," together with Shaaya, "Plaintiffs"), a California citizen, bring the instant putative class action on behalf of purchasers of certain diesel-powered vehicles, which were equipped with a diesel particulate filter ("DPF"). They allege that the DPF, by design, suffers from two defects: (1) it is prone to clogging under normal driving conditions; and (2) a warning light, which indicates when to begin a filter-cleaning process that prevents clogging, goes on too late or not at all. As alleged, a clogged DPF can cause engine failure and poses major safety risks.

Plaintiffs bring a variety of consumer claims, primarily asserting that Defendant defrauded consumers by failing to disclose DPF defects.

### a) The Alleged DPF Defect

In 2009, Defendant introduced a special exhaust filter in its diesel-powered vehicles, known as a DPF. FAC ¶ 1. The DPF is designed to remove from the exhaust of a diesel engine the diesel particulate matter colloquially known as soot. Id. ¶¶ 24–25. To keep the filter clean and to prevent clogging, the soot particles must be burnt through a combustion process known as "regeneration." Id. ¶ 1. Plaintiffs allege that 2016–2020 Range Rover and Jaguar Land Rover vehicles equipped with such a DPF System in the United States (the "Class Vehicles") suffer from the following defect:

> For regeneration to occur, a vehicle must be driven on a regular basis at highway speeds for prolonged periods of time. Consequently, the DPF in Defendant's diesel vehicles is prone to becoming clogged under many normal operating conditions including, but not limited to, frequent stop-and-go traffic. To make matters worse Defendant's DPF warning light system often activates only after it is too late for regeneration to occur, necessitating costly replacement of the DPF. These issues are collectively referred to herein as the "DPF Defect."

Id. 4. A clogged DPF may increase the heat of the vehicle's undercarriage as exhaust fumes are trapped, thus creating a risk of complete vehicular shutdown, exhaust inhalation by vehicle occupants, and/or fire. Id. ¶¶ 3, 29

An amber warning light system instructs drivers when regeneration is needed: "[a]n amber light indicates regeneration is required and instructs the driver to drive at highway speeds for approximately twenty minutes[,] . . . [a] red light indicates that the [DPF] is full and instructs the driver to contact a service center," and a green light displays when regeneration is complete. Id. ¶ 27. However, according to Plaintiffs, the amber light does not illuminate until the DPF is over 85% full of soot, which is too close to full and thus does not give the driver enough time to begin regeneration. Id. ¶ 28.

**b)  Plaintiffs' Experiences with the DPF Defect**

Shaaya is a New York citizen who leased a 2018 model diesel Range Rover HSE from the Land Rover Manhattan dealership in New York, New York in or around July 2018. Id. ¶ 9. Freiburghouse is a California citizen who purchased a 2017 model diesel Land Rover Range Rover Sport HSE equipped with a diesel engine from Penske Jaguar Land Rover in Cerritos, California ("Penske Jaguar") in or around December 2016. Id. ¶ 14.  Prior to acquiring their vehicles, Plaintiffs each "test drove the vehicle, spoke with the dealer sales representative at length about the vehicle and viewed the Monroney sticker posted on the side of the vehicle." Id. ¶¶ 9, 14.[1] Plaintiffs allege they were not informed that their vehicles suffered from the DPF Defect and relied upon this fact. Id.  Plaintiffs further allege that they would not have acquired their vehicles if the DPF Defect been disclosed. Id.

In November 2018, with 3,325 miles on the odometer, Shaaya's vehicle's DPF amber warning light illuminated, instructing him to drive at highway speeds to activate regeneration. Id. ¶ 10.  However, his vehicle would not accelerate past nine miles per hour and the light turned red (indicating full) within the hour. Id.  After unsuccessfully attempting to perform the regeneration process himself, Shaaya returned his vehicle to the dealership, where he was advised to replace his DPF. Id.  Shaaya requested that the cost of this replacement be covered pursuant to the vehicle's New Vehicle Limited Warranty (the "NVLW"), but this request was denied. Id.  He paid "$3,122.98 out-of-pocket for the repair." Id. ¶ 11.  Thereafter, in February 2019, with 4,766 miles on the odometer, Shaaya's DPF clogged again and required a second replacement. Id. ¶ 12.  Shaaya

---

[1] Monroney stickers are "labels that all automobile manufacturers . . . must affix to new vehicles," which contain information regarding, among other things, purchase-price and safety ratings. *Weston v. Subaru of Am., Inc.*, No. 20-5876, 2022 WL 1718048, at *1 n.2 (D.N.J. May 26, 2022) (citing 15 U.S.C. § 1231 *et seq.*).

alleges that he was, at the time of service, within the coverage of the NVLW and the "Emissions Coverage." Id. ¶ 10.[2]

For his part, Freiburghouse alleges that, in or about August 2020, with approximately 22,396 miles on the odometer, his vehicle's check engine light illuminated. Id. ¶ 15.  He brought the vehicle to Penske Jaguar on August 18, 2020, where he was told that the DPF was clogged, and the diesel exhaust fluid was compromised. Id.  The dealer induced regeneration to clean the DPF and replaced the fluid. Id.  Two days after picking up his vehicle, on August 23, 2020, Freiburghouse contacted Penske Jaguar to inform them his check engine light was on again. Id.  Penske Jaguar replaced his diesel exhaust fluid and the injector for the diesel exhaust fluid. Id.  When Freiburghouse asked why his DPF warning light never went on, the dealer service representative provided the following written explanation via text:  "the message for the particulate filter won't come on unless the system is completely blocked/clogged and then the vehicle would go into fail-safe mode (won't accelerate past 30 mph)." Id.  Although the dealership initially attempted to charge Freiburghouse a $189 "diagnostic fee," Penske Jaguar Land Rover ultimately agreed to cover this cost. Id.  Freiburghouse alleges that, at the time of service, his vehicle was within the NVLW and the "96 months/80,000 miles Emissions Coverage." Id. ¶ 15.

Shaaya and Freiburghouse allege that Defendant knew about the DPF Defect prior to their acquisition of the vehicles because it is a design defect (id. ¶ 37) and because Defendant conducted extensive testing/analysis of the Class Vehicles prior to release, which would have revealed the defect (id. ¶¶ 38–43).  They also allege that Defendant had knowledge of the defect because a high

---

[2] The Class Vehicles are subject to two different emissions warranties:  the Federal Emission Control System Warranty (the "Federal Emissions Warranty") and California's Emissions Control System Warranty. ECF No. 30-4 at 8.

number of consumers ordered replacement exhaust filters, filed complaints (both publicly and confidentially), and threatened litigation. Id. ¶¶ 41–46, 50.

### c) Procedural Background

Shaaya initiated this action by filing a putative class action complaint on May 7, 2020. ECF No. 1.  On July 17, 2020, Defendant filed a motion to dismiss the Complaint. ECF No. 14.  That motion was withdrawn as the parties consented to extending Shaaya's time to file an amended complaint. ECF No. 22.

On August 28, 2020, Shaaya, joined by Freiburghouse, filed the First Amended Complaint. ECF No. 24.  The First Amended Complaint asserts ten causes of action:  violation of New York's General Business Law for Deceptive Acts or Practices § 349 by Shaaya (Count I); breach of express warranty in violation of N.Y. U.C.C. § 2-313 by Shaaya (Count II); breach of the implied warranty of merchantability in violation of N.Y. U.C.C. § 2-314 by Shaaya (Count III); fraudulent omission by both Shaaya and Freiburghouse (Count IV); breach of implied and written warranty in violation of the Magnuson-Moss Warranty Act ("the MMWA"), 15 U.S.C. § 2301, *et seq.,* by both Shaaya and Freiburghouse (Count V); unjust enrichment by both Shaaya and Freiburghouse (Count VI); violation of the California Consumer Legal Remedies Act (the "CLRA"), Cal. Civ. Code § 1750, *et seq.*, by Freiburghouse (Count VII); violation of the California Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, by Freiburghouse (Count VIII); breach of express warranty under Cal. Com. Code § 2313 by Freiburghouse (Count IX); and Breach of Implied Warranty of Merchantability under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 and 1791.1, *et seq.*, by Freiburghouse (Count X). Id. at 38–59.  The First Amended Complaint asserts subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Id. ¶ 21.

On October 2, 2020, Defendant filed the instant motion to dismiss the First Amended Complaint pursuant to Rule 12(b)(1) and 12(b)(6), arguing that Plaintiff Freiburghouse lacks Article III standing and that both Plaintiffs fail to state a claim for relief. ECF No. 30-1 ("Mot."). Plaintiffs filed an opposition on November 23, 2020 ("Opp."), to which Defendant replied on December 14, 2020 ("Reply").  The Court will address each of Defendant's arguments in turn below.

## II.    <u>ARTICLE III STANDING</u>

First, the Court will analyze whether Freiburghouse has established Article III standing.

### a)  **Legal Standard**

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of standing, as standing is a jurisdictional matter. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012); *Koronthaly v. L'Oreal USA, Inc.*, No. 07-5588, 2008 WL 2938045, at *4 (D.N.J. July 29, 2008), *aff'd*, 374 F. App'x 257 (3d Cir. 2010).  To establish standing, a plaintiff must show:  (1) an injury in fact, (2) causation, and (3) redressability. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  "The party invoking federal jurisdiction bears the burden of establishing [standing]." *Lujan v. Defenders of Wildlife et al.*, 504 U.S. 555, 561 (1992).  On a motion to dismiss, a plaintiff must make a plausible claim of standing, supporting each element "in the same way as any other matter on which [he] bears the burden of proof." *Id.*

The first element asks whether the plaintiff suffered harm. *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 138, 142 (3d Cir. 2009).  The plaintiff must show that he "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (citation omitted).  An injury is "concrete" if it actually exists, and "particularized" if it affects the plaintiff personally and individually. *Id.*; *Lujan*, 504

U.S. at 560 n.1.  Future injury must be imminent, *i.e.*, "certainly impending," and not a mere possibility. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

    **b)  Discussion**

    Here, Defendant argues that Freiburghouse failed to meet the first element of standing; it does not contest the second or third element.[3] Mot. at 10–12.  Specifically, Defendant argues that Freiburghouse did not establish an injury in fact because his service fees were waived and his allegations are too speculative to confer standing. Mot. at 11–12.  However, the Court finds, as explained below, that Freiburghouse's allegations are sufficient to confer standing.

    The Third Circuit Court of Appeals has held that a plaintiff may establish an injury in fact by "alleg[ing] that she received a product that failed to work for its intended purpose or was worth objectively less than what one could reasonably expect." *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010) (emphasis added); *see In re Johnson & Johnson Talcum Powder Prod. Mktg.*, 903 F.3d 278, 283 (3d Cir. 2018) (recognizing the viability of the benefit of the bargain theory).  Here, Freiburghouse pleads that his vehicle's DPF system, in addition to being prone to clogging, has a defective warning light system.  The warning light in the Class Vehicles are intended to alert a driver when regeneration is required:  an amber light should alert the driver to begin regeneration before the DPF is full and a red light should indicate that the DPF is full and requires service. FAC ¶ 27.  Freiburghouse alleges that, in August 2020, the DPF warning light system in his vehicle did not illuminate <u>at all</u> when it needed regeneration. Id. ¶ 15.   Thereafter,

---

[3] The second element focuses on who inflicted the plaintiff's injury. *Toll Bros.*, 555 F.3d at 142. A plaintiff must allege "a causal connection between [his] injury and the conduct complained of." *Lujan*, 504 U.S. at 560–61 (requiring injury to be "fairly traceable" to the defendant's challenged conduct).  The third element requires a plaintiff to show that it is "likely, as opposed to merely speculative, that [the plaintiff's] injury will be redressed by a favorable decision." *Pitt News v. Fisher*, 215 F.3d 354, 361 (3d Cir. 2000) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 181 (2000)).

Freiburghouse's vehicle's DPF became clogged, and his diesel exhaust fluid was compromised. Id.  It appears that Freiburghouse experienced further issues with the DPF and its warning light system after this incident, despite a servicing by the dealership. Id.  By alleging that Defendant's product is not functioning as intended, Freiburghouse has demonstrated a concrete, actual economic injury under the benefit of the bargain theory. *See Koronthaly*, 374 F. App'x at 259.

In similar automobile defect cases, courts have found that a plaintiff suffers an injury in fact if he alleges, as Freiburghouse did, that he paid for a defect-free vehicle but instead received a less valuable, defective vehicle.  For example, in *McQueen v. BMW of N. Am.*, the plaintiff alleged that her vehicle's faulty transmission system caused the car to shift into neutral rather than park. No. 12-6674, 2013 WL 4607353, at *3 (D.N.J. Aug. 29, 2013).  The court held that the plaintiff demonstrated an injury in fact because she purchased "an allegedly defective vehicle when she was under the impression that it was functioning properly." *Id.*

Similarly, here, Freiburghouse has demonstrated an injury in fact because he alleges that, at the time of purchase, he was under the impression that his vehicle's DPF functioned, but later realized the vehicle's DPF was prone to clogging and had a faulty warning light. *See id.*; *see also Barakezyan v. BMW of N. Am., LLC*, No. 16-173, 2016 WL 11505592, at *4–*5 (C.D. Cal. May 19, 2016) (allegations that defective vehicle would emit a troublesome and obnoxious noise sufficiently demonstrated "a 'concrete and particularized' injury—namely, a decrease in the value of the Subject Vehicle vis-a-vis what he bargained for—and one that is 'actual or imminent,' not 'conjectural' or 'hypothetical'"); *Kearney v. Hyundai Motor Co.*, No. 09–1298, 2010 WL 9093204, *5 (C.D. Cal. June 4, 2010) (finding that alleged defects with air bag classification system reduced the vehicle's value, thus depriving the consumer plaintiff of the benefit of the bargain and causing him injury).

Defendant argues that Freiburghouse does not have standing because he has not paid for any repairs, since Penske Jaguar replaced his diesel fluid tank and fluid injector, and induced regeneration free of charge. Mot. at 11. However, as these repairs were allegedly ineffective, the fact that they were done for free does not preclude standing. *See* FAC ¶¶ 15 (Freiburghouse alleges that his dealer service representative sent him a message after repair indicating that his vehicle's DPF warning light will not go on until it is too late to begin regeneration), 16 (Freiburghouse alleges that he "has not been offered a suitable repair or replacement"). By contrast, in *Contreras v. Toyota Motor Sales U.S.A. Inc.*, cited by Defendant, the plaintiffs failed to allege standing because the defendant fully repaired the allegedly faulty braking system and the "[p]laintiffs d[id] not allege that Toyota's repair was ineffective." 484 F. App'x 116, 118 (9th Cir. 2012).[4]

Defendant's attempts to analogize the instant case to *Koronthaly v. L'Oreal USA Inc.*, No. 07-5588, 2008 WL 2938045, at *1 (D.N.J. July 29, 2008); *James v. Johnson & Johnson Consumer Companies, Inc.*, No. 10-3049, 2011 WL 198026, at *2 (D.N.J. Jan. 20, 2011); or *Estrada v. Johnson & Johnson*, No. 16-7492, 2017 WL 2999026, at *6 (D.N.J. July 14, 2017) are also unavailing. Those cases concern plaintiffs who consumed a product (like lipstick or baby powder) that functioned as intended and then learned—after the fact—that they could have been injured by

---

[4] Defendant further argues that the "*Bang* court require[s] plaintiffs to plead out-of-pocket damages or a 'quantifiable or measurable [] demonstration of loss in value" in order to meet standing. Opp. at 6 (quoting *Bang v. BMW of N. Am., LLC*, No. 15-6945, 2016 WL 7042071, at *6 (D.N.J. Dec. 1, 2016)). However, Defendant's characterization is misplaced and quotes an excerpt of that court's failure to state a claim analysis. *Bang* explicitly warned against "conflat[ing] Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive." 2016 WL 7042071, at *4 (citation omitted). When the court therein analyzed the Article III standing requirement, it did not require the plaintiffs to plead a "quantifiable or measurable" loss to assert an injury in fact. Rather, the court found that the plaintiffs therein alleged past and imminent future injury because the resale value of the plaintiffs' vehicles diminished and several plaintiffs incurred out-of-pocket costs, as a result of alleged engine defects. *Id.* at *4. Moreover, *Bang* recognized that time spent taking a vehicle to the dealership for repairs supports a finding of injury in fact, *see id.*, thus supporting a finding of injury in fact here.

those products, but were not.  Because the products functioned as intended in the course of consumption, the courts concluded that the plaintiffs received what they paid for. *See, e.g.*, *Estrada*, 2017 WL 2999026, at *11 (D.N.J. July 14, 2017) (concluding that the plaintiff received the benefit of her bargain because she "fail[ed] to allege that [the] [b]aby [p]owder was ineffective for its intended use; to the contrary, she continued purchasing [b]aby [p]owder for a substantial period, and consumed the product in its entirety each time.").  Freiburghouse, unlike the plaintiffs in *Estrada*, *Koronthaly*, and *James*, alleges that Defendant's product did not work as intended and, as such, he could not utilize the vehicle to its full functionality—he continues to own an allegedly defective vehicle.[5]

Accordingly, the Court finds that Freiburghouse has demonstrated an injury in fact sufficient to confer standing because he "set forth sufficient factual allegations that, if proven true, would permit a factfinder to determine that []he suffered at least some economic injury" from his purchase. *In re Johnson & Johnson*, 903 F.3d at 283 (citing *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005)).

## III.   FAILURE TO STATE A CLAIM

Next, the Court will turn to the question of whether the First Amended Complaint states a claim for relief.  The Court finds, as explained below, that the Complaint states a claim for relief as to all asserted counts.[6]

---

[5] Lastly, the Court distinguishes *Chan v. Daimler AG*, wherein the court dismissed claims of defective automobile parts (specifically an engine prone to wear) for lack of standing because the vehicles "performed as promised during the [w]arranty period, and exhibited problems only after the expiration of the [w]arranty." No. 11-5391, 2012 WL 5827448, at *1 (D.N.J. Nov. 9, 2012). Here, by contrast, Defendant does not argue that Freiburghouse's vehicle's defects manifested after the warranty period.

[6] More specifically, as discussed further below, Plaintiffs adequately plead breach of express warranty claims (Counts II and IX) to the extent the claims apply to the NVLW, but not to the extent the claims apply to the Federal Emissions Warranty.

### a)  Legal Standard

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "A pleading that offers 'labels and conclusions . . . will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, when reviewing complaints for failure to state a claim, district courts should engage in a two-part analysis:  "First, the factual and legal elements of a claim should be separated . . . . Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citations omitted).[7]

### b)  Count I:  Violation of N.Y. GBL § 349 (Shaaya)

Under Count I, Shaaya contends that Defendant violated N.Y. G.B.L. § 349, New York's consumer protection statute. FAC ¶¶ 72–86.  Section 349 prohibits "deceptive acts or practices in

---

[7] When assessing a motion to dismiss under Rule 12(b)(6), this Court is limited to considering the allegations in the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents on which a plaintiff's claims are based. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. § 349(a).  To plead a breach of section 349, "a plaintiff must demonstrate that:  (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995)).  Omissions may be actionable under section 349, *Feliciano v. Gen. Motors LLC*, No. 14-6374, 2016 WL 9344120, at *9 (S.D.N.Y. Mar. 31, 2016), and claims brought pursuant to the law are not subject to the particularity requirements of Rule 9(b), *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).

Shaaya alleges that Defendant's failure to disclose the DPF Defect and other material facts related to said defect:  (1) constituted a deceptive act directed at consumers, (2) was misleading in a material way "because a reasonable person would have considered [the facts concealed or not disclosed] in deciding whether or not to purchase or lease Defendant's Class Vehicles, or to pay less for them," and (3) caused injury to him and Class Members. FAC ¶¶ 75–85.  An omission can constitute a deceptive act or practice for the purposes of section 349, "where the business alone possesses material information that is relevant to the consumer and fails to provide this information." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995); *see Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 129 (E.D.N.Y. 2011).  Here, Plaintiffs allege facts indicating that Defendant was aware of the alleged DPF Defect and failed to disclose this defect to consumers. *See* FAC ¶¶ 49–55.  Nevertheless, Defendant argues that it did not have <u>exclusive</u> knowledge of the alleged DPF Defect because it was mentioned in public complaints, articles, and online forums. Mot. at 30 (citing FAC ¶ 52).

At the motion to dismiss stage, courts allow a section 349 claim to proceed despite the presence of public information concerning the alleged omission if it is unclear whether the

information was "available to plaintiffs and used by reasonable consumers." *Feliciano*, 2016 WL 9344120, at *9 (quoting *Gomez-Jimenez v. N. Y. Law Sch.*, 943 N.Y.S.2d 834, 857 (Sup. Ct. 2012) *aff'd* 956 N.Y.S.2d 54 (2012)).   Here, it is unclear whether the public complaints that were identified in the First Amended Complaint were reviewed by reasonable American consumers or available to Shaaya at the time of purchase. *See, e.g.*, FAC ¶¶ 50 (public complaint posted on a website with a United Kingdom domain), 52 (same).  Therefore, the Court finds that Shaaya has presented an actionable omission despite the presence of these public complaints. *See Feliciano*, 2016 WL 9344120, at *10 (finding that allegations of public complaints regarding defect at issue were insufficient to relieve the defendant car manufacturer of liability); *Chiarelli v. Nissan N. Am., Inc.*, No. 14-4327, 2015 WL 5686507 (E.D.N.Y. Sept. 25, 2015) (holding that defendant had a duty to disclose latent defects despite allegations that consumer complaints were made to regulators and visible on public websites).

Furthermore, the territorial reach of section 349 is satisfied here.  The New York Court of Appeals has found that the intent of section 349 is "to protect consumers in their transactions that take place in New York" and thus, "to qualify as a prohibited act under [section 349], the deception of a consumer must occur in New York." *Goshen v. Mut. Life Ins. Co.,* 98 N.Y.2d 314, 324–325 (2002).  Courts assume that the deception of the consumer takes place in New York if the consumer is a New York resident and/or if the transaction at issue took place in New York. *See, e.g.*, *Szymczak v. Nissan N. Am., Inc.*, No. 10-7493, 2011 WL 7095432, at *13 (S.D.N.Y. Dec. 16, 2011) (allowing section 349 claims to proceed as to those plaintiffs who resided in New York or purchased their vehicles in New York, but dismissing all section 349 claims "as to those plaintiffs who do not reside in New York or did not purchase their vehicles in New York"); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-2413, 2013 WL 4647512, at *19 (E.D.N.Y. Aug. 29, 2013) (dismissing section 349 claims "brought by and on behalf of <u>non-</u>New York plaintiffs and putative

class members" but allowing New York plaintiffs to proceed) (emphasis added); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N.Y. 1997) (dismissing section 349 claim where it appeared that plaintiff purchased his vehicle in California). Here, the Court may safely assume that the deceptive conduct took place in New York because the transaction at issue (the purchase of the vehicle) took place in New York and involved a New York resident (Shaaya).

Defendant argues that the section 349 claim must be dismissed because Shaaya has not alleged sufficient facts concerning the relationship between itself and the non-party dealership from which Shaaya purchased his vehicle. Mot. at 29 (citing *Woods*, 807 F. Supp. 2d at 121). However, *Woods* held that a section 349 claim based upon a fraudulent omission satisfies the pleading requirements—even if the plaintiff purchased the product at issue from a non-party retailer—if the defendant, like the Defendant here, had "knowledge of the purported defect and failed to disclose that information." 807 F. Supp. 2d at 129. Moreover, courts routinely allow section 349 claims to proceed against a car manufacturer though the consumer purchased his vehicle from a non-party dealership, without requiring allegations of a direct relationship between the dealership and the defendant. *See, e.g.*, *Tomassini v. FCA US LLC*, No. 14-1226, 2015 U.S. Dist. LEXIS 81009, at *2 (N.D.N.Y. June 23, 2015) (Plaintiff purchased vehicle from wholesale dealer in New York); *Feliciano*, 2016 WL 9344120, at *9 (vehicle was purchased from non-party dealer in New York).

Accordingly, Plaintiff has sufficiently stated a violation of section 349 by Defendant and the motion to dismiss Count I is denied.[8]

---

[8] Defendant also argues that an omission must render an affirmative statement misleading to be actionable under section 349. Mot. at 40 (citing *Henry v. Rehab Plus, Inc.*, 404 F. Supp. 2d 435, 22 (E.D.N.Y 2005) (holding that an "omission becomes a misrepresentation only in a situation in which it renders other statements… misleading)). However, most courts have either rejected the *Henry* rule entirely or found it not applicable in the consumer fraud context. *See Tomassini*, 2015 WL 3868343, at *7–8, *13 n. 3 (rejecting *Henry*); *Dixon v. Ford Motor Co.*, No. 14-6135, 2015

**c)  Counts II and IX:  Breach of Express Warranty (Shaaya and Freiburghouse)**

Under Count II, Shaaya asserts a claim for a breach of express warranty under N.Y. U.C.C.

§ 2-313.  FAC ¶¶ 87–95.  Under Count IX, Freiburghouse asserts a claim for breach of express

warranty under Cal. Com. Code § 231. Id. ¶¶ 157–64.  Plaintiffs assert that Defendant breached

two different warranties, the NVLW and the Federal Emission Control System Warranty (the

"Federal Emissions Warranty"),[9] by failing to disclose the DPF Defect. Id. ¶¶ 87–95, 157–64.  The

Court finds, as explained below, that Plaintiffs have sufficiently pleaded their breach of express

warranty claims as to the NVLW but not as to the Federal Emissions Warranty.

*1.  The New Vehicle Limited Warranty*

Defendant has attached the NVLW to its Motion, which includes the following "Warranty

Statement":

> Jaguar Land Rover North America, LLC, warrants that during the warranty period,
> if a Land Rover vehicle is properly operated and maintained, repairs required to
> correct defects in <u>factory-supplied materials or factory workmanship</u> will be
> performed without charge upon presentment for service at an authorized Land
> Rover retailer; any component covered by this warranty found to be defective in
> <u>materials or workmanship</u> will be repaired, or replaced, without charge with a new
> or remanufactured part distributed by Jaguar Land Rover North America, LLC, at
> its sole option.

ECF No. 30-4 at 7 (emphasis added).  Defendant argues that the NVLW only covers manufacturing

defects, and that, because Shaaya's breach of express warranty claim is premised on an alleged

design defect with the DPF system, it is not covered by the NVLW. MTD at 13.  In opposition,

---

WL 6437612, at *10 n.8 (E.D.N.Y. Sept. 30, 2015) (same); *Corson v. Toyota Motor Sales, U.S.A.*,
Inc., No. 12-08499, 2013 U.S. Dist. LEXIS 63260, at *21–22 (C.D. Cal. Apr. 24, 2013) (same);
*Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 550 n. 9 (D. Md. 2011) (finding the *Henry* rule not
applicable to a consumer fraud matter).
[9] Although Plaintiffs do not specify which emissions warranty Defendant breached, the Court
assumes that they are referencing the Federal Emissions Warranty because they do not dispute
Defendant's characterization on this point. *See* Opp. at 28.

Plaintiffs argue that at the very least, the issue of whether the alleged DPF Defect is a manufacturing defect is a factual question that cannot be resolved at this stage. Opp. at 30–31.

It is well settled under New York and California law that where, as here, a warranty protects against defects in "materials or workmanship," the warranty covers manufacturing defects, but not design defects. *Haag v. Hyundai Motor Am.*, 294 F. Supp. 3d 102, 105 (W.D.N.Y. 2018); *Miller v. Hyundai Motor Am.*, No. 15-4722, 2017 WL 4382339, at *4 (S.D.N.Y. Sept. 29, 2017); *Johnson v. Nissan N. Am.*, Inc., 272 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) (collecting cases). "The critical difference between manufacturing defects and design defects is the intention of the manufacturer." *Miller*, 2017 WL 4382339, at *4 (citing *Urena v. Biro Mfg. Co.*, 114 F.3d 359, 363 (2d Cir. 1997). A "manufacturing defect is a mistake – an unintended deviation from normal or routine production that renders an ordinarily safe product dangerous," whereas a design defect "involves products made in the precise manner intended by the manufacturer" but which suffer from some systemic defect. *Cummings v. FCA USA LLC*, 401 F. Supp. 3d 288, 314 (N.D.N.Y. 2019) (citing *Urena*, 114 F.3d at 363); *see also Gertz v. Toyota Motor Corp.*, No. 10-1089, 2011 WL 3681647, at *3 (C.D. Cal. Aug. 22, 2011) (("Unlike defects in materials or workmanship, a design defect is manufactured in accordance with the product's intended specifications.") (quoting *Brothers v. Hewlett–Packard Co.,* No. 06-02254, 2007 WL 485979, at *4 (N.D. Cal. Feb. 12, 2007))).

Although Plaintiffs' allegations suggest that the DPF Defect is present in all relevant models, for pleading purposes, their allegations are sufficient to establish a manufacturing defect as well. For example, the First Amended Complaint labels the DPF Defect as a "manufacturing defect" at least twice. *See, e.g.*, FAC ¶ 110 ("Defendant concealed or failed to disclose the true nature of the design and/or manufacturing defect(s) contained in the Class Vehicles' DPF system . . . ."), ¶ 106 ("Defendant knew that the Class Vehicles' front DPF were defectively designed

16

and/or manufactured . . . ."").   Moreover, Plaintiffs have plausibly alleged that Defendant could not have intended for the warning light system to malfunction.  Specifically, Plaintiffs allege that by the time Shaaya's warning light illuminated amber, instructing him to begin the regeneration process, the DPF system was so clogged that the vehicle would not accelerate past nine miles per hour, making regeneration impossible. Id. at ¶ 10.  By contrast, Freiburghouse's DFP warning light purportedly did not illuminate at all.  Id. at ¶ 15.  While Plaintiffs allege that the DFP defect is present in all Class Vehicles, "that does not necessarily mean that the defect must be in the design." *See Falk v. Nissan N. Am., Inc.*, No. 17-4871, 2018 WL 2234303, at *2 (N.D. Cal. May 16, 2018) (citation omitted).  Indeed, as Plaintiffs have alleged that these warning lights do not malfunction in same way across all vehicles, they have alleged that the defect may not be systemic, but instead a deviation from what Defendant intended to sell. *Johnson*, 272 F. Supp. 3d at 1177–78 (N.D. Cal. 2017).  And in any event, whether a defect is really a design or manufacturing defect is a factual question that is best resolved after the parties have an opportunity to conduct discovery. *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015); *see also Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 467 (S.D.N.Y. 2014) ("Whether the[] alleged defects arose from a faulty design, faulty materials or faulty workmanship cannot be ascertained absent discovery . . . .") (citation omitted))

Given that the DPF Defect may be considered a manufacturing defect at this stage, Plaintiffs have sufficiently alleged a breach of the NVLW.

### 2.   *The Federal Emissions Warranty*

Turning to the Federal Emissions Warranty, Defendant concedes that the Federal Emissions Warranty, unlike the NVLW, covers design defects. Mot. at 14–15.  However, the Federal Emissions Warranty only covers certain parts of the vehicle. ECF No. 30-4 at 17–18. With regard to the vehicle's exhaust system, the Federal Emissions Warranty covers the "catalytic

converter," "EGR cooler and valve housing assembly," "exhaust manifold," "exhaust pipe," and various parts of the vehicle's "Diesel Selective Catalyst Reduction (SCR) System" (including the "SCR particulate filter"). Id. at 17.   Plaintiffs argue that the SCR particulate filter is another name for the DPF. Opp. at 28.   However, there are no allegations in the First Amended Complaint to support this assertion (*see generally* FAC), and Plaintiffs offer to address any pleading deficiency on the issue via amendment (Opp. at 28, n.14).

Accordingly, Counts II and IX may proceed, as Plaintiffs have adequately pleaded that the DPF Defect is covered by the NVLW.  *See Johnson*, 272 F. Supp. 3d at 1177–78; *Marshall*, 51 F. Supp. 3d at 467.  However, to the extent Plaintiffs also alleges in Counts II and IX that Defendant breached the Federal Emissions Warranty, Plaintiffs claims are dismissed without prejudice.

### d)  Count III:  Breach of the Implied Warranty of Merchantability under N.Y. U.C.C. § 2-314 (Shaaya)

Under Count III, Shaaya asserts that Defendant breached the implied warranty of merchantability in violation of N.Y. U.C.C. § 2-314. FAC ¶¶ 96–103.  Section 2-314 provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. § 2-314(1).  To be merchantable, "the goods must be: (1) fit for the ordinary purpose for which they are used; (2) capable of passing without objection in the trade under the contract description; and (3) of fair and average quality for such goods." *Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 530–31 (E.D.N.Y. 2012).

Shaaya alleges that Defendant is a merchant with respect to the sale of the Class Vehicles, which "were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the Class Vehicles suffer from a DPF Defect that can make driving unreasonably dangerous." FAC ¶¶ 98, 100.  Defendant contends that Shaaya failed to sufficiently support his claim that the Class Vehicles were not fit for their ordinary purpose and that the implied

warranty of merchantability claim is barred for failure to establish privity between itself and Shaaya. Mot. at 20–21.  The Court dismisses each of Defendant's arguments in turn below.

First, under New York law, the 'ordinary purpose' of a motor vehicle is "to enable the purchaser to transport herself upon the streets and highways . . . in a reasonably safe manner." *Jackson*, 845 F. Supp. 2d at 531 (quoting *Enobakhare v. Carpoint, LLC*, No. 08-4798, 2011 WL 703920, at *9 (E.D.N.Y. Jan. 10, 2011) (citations omitted)); *see Berger v. Mazda Motor of Am., Inc.*, No. 16-1835, 2019 WL 1428449, at *8 (E.D.N.Y. Mar. 30, 2019).  Here, Shaaya alleges that, in November 2018, his vehicle's DPF warning light system instructed him to drive at highway speeds but would not accelerate past nine miles per hour, due to a failed regeneration. FAC ¶ 10.  Shaaya's vehicle allegedly suffered from another failed DPF regeneration in February 2019 and continues to suffer from the DPF Defect (id. ¶ 12), which can cause sudden and unexpected loss of power, exhaust inhalation by vehicle occupants, and increased risk of fire (id. ¶ 3).  Based on these allegations, the Court may reasonably infer that the DPF Defect prevents Shaaya from using his vehicle in a reasonably safe manner and may impede his ability to transport himself. *See Berger*, 2019 WL 1428449, at *8; *Jackson*, 845 F. Supp. 2d at 531.  Accordingly, Shaaya has sufficiently pleaded that the Class Vehicles are not fit for their ordinary purpose and are thus unmerchantable. *See Enobakhare*, 2011 WL 703920, at *9 (holding that plaintiff sufficiently alleged breach of implied warranty because he alleged that car had engine problems and emitted hot air and smoke).

Furthermore, Shaaya is excused from pleading privity.  Although privity of contract is generally required for a purchaser to recover under a breach of implied warranty theory, New York law recognizes two exceptions:  (1) where the product in question is a "thing of danger," meaning that, "when used for the purpose for which it is made it is likely to be a source of danger to several or many people if not properly designed and fashioned"; and (2) where plaintiff is asserting the

claim as a third-party beneficiary." *Amato v. Subaru of Am., Inc.*, No. 18-16118, 2019 WL 6607148, at *13 (D.N.J. Dec. 5, 2019) (quoting *Goldberg v. Kollsman Instrument Corp.*, 191 N.E.2d 81, 83 (N.Y. 1963)).  Both exceptions apply here.  As alleged, Shaaya's vehicle is likely to be a source of danger to himself, his passengers, and other drivers, because it experiences "sudden and unexpected loss of power" (FAC ¶ 3), among other issues. *See Amato*, 2019 WL 6607148, at *13 ("thing of danger" exception applied because the vehicle's alleged defects caused loss of power, reduced braking, and "unexpected" engine shutdown); *see also Hubbard v. Gen. Motors Corp.*, No. 95-4362, 1996 WL 274018, at *5 (S.D.N.Y. May 22, 1996) ("[A] vehicle equipped with a defective braking system is likely to be a source of danger when driven."). Furthermore, Shaaya is a third-party beneficiary because he is "the purchaser of an automobile . . . whose use of the product is contemplated by the manufacturer." *Amato*, 2019 WL 6607148, at *13 (quoting *Hubbard*, 1996 WL 274018, at *5).

Accordingly, Shaaya is excused from pleading privity and sufficiently stated a claim for breach of the implied warranty of merchantability under Count III.

**e)  Count IV:  Fraudulent Omission (Shaaya and Freiburghouse)**

Under Count IV, both Plaintiffs plead a cause of action for common law fraudulent omission, alleging that Defendant intentionally concealed and failed to disclose the DPF Defect. FAC ¶¶ 104–12.  For the purposes of this motion only, the parties assume that the laws of both New York and California are applicable to Count IV. *See* Mot. at 23 n.6; Opp. at 13.

To state a claim for fraudulent concealment under New York law, a plaintiff must plead four elements:  "(1) that the defendant failed to disclose material information that he had a duty to disclose, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 218 (S.D.N.Y. 2007),

*aff'd*, 354 F. App'x 496 (2d Cir. 2009) (quoting *Bermuda Container Line Ltd. v. Int'l Longshoremen's Assoc.,* 192 F.3d 250, 258 (2d Cir. 1999)).  Similarly, the *prima facie* elements of a common law fraud claim under California law are:  "(1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Jordan v. Paul Financial, LLC,* 285 F.R.D. 435, 454 (N.D. Cal. 2012) (citation omitted).  The heightened pleading standards of Federal Rule of Civil Procedure 9(b) apply to fraudulent omissions claims brought under both New York (*Feliciano*, 2016 WL 9344120, at *14) and California law (*Eisen v. Porsche Cars North America, Inc.*, No. 11-9405, 2012 WL 841019, at *2 (C.D. Cal. Feb. 22, 2012)).

Defendant argues that Plaintiffs insufficiently allege that it owed a duty to disclose the DPF Defect and fail to meet the particularity standards under Rule 9(b). Mot. at 25–28.  The Court discusses each argument in turn below.

First, the Court finds that Plaintiffs have sufficiently alleged that Defendant owed a duty to disclose the DPF Defect under both New York and California law.  A duty to disclose arises under New York law if the plaintiffs allege facts showing that the defendant was in possession of "(1) [ ]superior knowledge, (2) that is not available to the other party by reasonable inquiry, and (3) the first party knows that the second party is acting on the basis of mistaken knowledge." *Naughright v. Weiss*, 826 F. Supp. 2d 676, 690 (S.D.N.Y. 2011) (citing *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 582 (2d Cir. 2005).  Although Defendant contests the second element here, Plaintiffs have plausibly alleged that information available to Defendant about the

21

DPF Defect was not available to them because Defendant had the benefit of confidential reports and complaints, testing data, and other insider knowledge. *See* FAC ¶¶ 37–51.[10]

Under California law, unlike New York law, "a manufacturer's duty to consumers is limited to its warranty, unless a safety issue is present or there has been some affirmative misrepresentation." *Gray v. Toyota Motor Sales, U.S.A., Inc.*, 554 F. App'x 608, 609 (9th Cir. 2014) (citing *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 834–35 (2006)). To succeed on a safety defect theory, plaintiffs must allege "(1) the existence of a design defect, (2) the existence of an unreasonable safety hazard, (3) a causal connection between the alleged defect and the alleged safety hazard, and [(4)] that the manufacturer knew of the defect at the time a sale was made." *Borkman v. BMW of N. Am., LLC*, No. 16-2225, 2017 WL 4082420, at *18 (C.D. Cal. Aug. 28, 2017) (citing *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025–26 (9th Cir. 2017)).  Plaintiffs have alleged all four elements here:  (1) the DPF Defect is a design defect (*see supra* section 3(c)(1)); (2, 3) the DPF Defect can cause heat and fumes to become trapped in the undercarriage, which in turn can cause unreasonable safety hazards such as sudden and unexpected loss of power, exhaust inhalation by passengers, and fire (FAC ¶¶ 3, 29); and (4) Defendant knew of the defect at the time of sale (id. ¶¶ 41–46, 50).[11]

---

[10]  Cases cited by Defendant on this point (Reply at 5) are either not relevant or distinguishable. *See, e.g.*, *Orange Transp. Servs., Inc. v. Volvo Group North America*, LLC, 450 F. Supp. 3d 311 (W.D.N.Y. 2020) (transport company did not allege sufficient facts indicating that information about defective Volvo trucks was not available by reasonable inquiry because its "vice president, Kirik, has purchased over 150 semi-trucks and was obviously aware of at least some issues with prior model-year D13 engines and Volvo's D16 engine given that he raised those concerns with Volvo's representatives"); *Bruno v. Zimmer, Inc.*, Case No. 15-6129, 2017 WL 8793242, at *10 (E.D.N.Y. Aug. 11, 2017) (contains assumptions regarding whether information about defendant's defective hip replacement products could not have been obtained by reasonable inquiry without providing a full analysis of second element).

[11]  Defendant argues that, because the First Amended Complaint did not name any plaintiff or putative class members who experienced a safety issue, it did not adequately plead a safety defect under California Law. Mot. at 28 (citing *Tietsworth v. Sears, Roebuck & Co*, No. 09-00288, 2009 U.S. Dist. LEXIS 40872, at *5–*6 (N.D. Cal. Oct. 13, 2009)).  However, contrary to Defendant's

Further, Plaintiffs' claims for fraudulent omission satisfy the Rule 9(b) particularity requirements.  In order to satisfy Rule 9(b), fraudulent omissions claims must set out:  "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud." *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 664 (S.D.N.Y. 2007) (citing *Odyssey Re (London) Ltd. v. Stirling Cook Browne Holdings, Ltd.*, 85 F. Supp. 2d 292, 293 (S.D.N.Y. 2000), *aff'd*, 2 Fed. App'x 109 (2d Cir. 2001).  Put otherwise, Plaintiffs must provide the "who, what, when, where, and how" of the alleged omission. *See Conti v. Am. Honda Motor Co.*, No. 19-2160, 2019 WL 10371067, at *5 (C.D. Cal. Oct. 17, 2019); *MacDonald v. Ford Motor Co.,* 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014).   Here, Plaintiffs allege the who (Defendant), what (the DPF Defect),[12] when (prior to the sale of the class vehicles to the present), where (the various channels of information through which Defendant sold the Class Vehicles, including interactions with sales representations at authorized dealerships in New York and California, and

---

assertions, Plaintiffs need not allege that consumers actually experienced the alleged unreasonable safety risk, so long they allege a plausible unreasonable safety risk that would have been material to the reasonable consumer, as Plaintiffs have done here. *See Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 918 (C.D. Cal. 2010) (explaining that *Tietsworth*'s requirement to allege a manifestation of the safety risk is limited to the standing analysis).

[12] The First Amended Complaint sufficiently describes the DPF defect by identifying the DPF system in a particular set of Land Rover/Range Rover vehicles and describing the problems caused by the defect:  it is prone to clogging under normal driving conditions and the warning light goes on too late. FAC ¶¶ 2, 26–34; *see Zuehlsdorf v. FCA US LLC*, No. 18-1877, 2019 WL 2098352, at *6 (C.D. Cal. Apr. 30, 2019) (finding that plaintiff sufficiently described defect with vehicle's transmission system, which formed the basis of his fraudulent omission claim, because he identified the particular transmission system affected and described the problems allegedly caused by the defect); *Aguilar v. GM LLC*, Case No. 03-00437, 2013 WL 3872502, at *2–*6 (E.D. Cal. July 25, 2013) (plaintiff stated a fraudulent omission claim where he alleged that steering wheel defect in the "Lambda crossover platform" of certain vehicles resulted in "loss of power steering, hard steering, forceful pulling to the left and right, and loss of steering control"); *Marsikian v. Mercedes Benz USA, LLC*, No. 08-04876, 2009 WL 8379784, at *1, *8 (C.D. Cal. May 4, 2009) (plaintiff stated a fraudulent omissions claim where he identified the part of the vehicle's climate control system that was defective and explained the problems caused by the defect).

viewing Monroney stickers), and how (had the Plaintiffs and class members known about the DFP

Defect they would not have purchased or leased the vehicles, or would have paid less for them).

FAC ¶¶ 9, 14, 107–11; *see Goldstein v. Gen. Motors LLC*, 517 F. Supp. 3d 1076, 1086–87 (S.D.

Cal. 2021); *see also Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264, 277 (E.D. Mich. 2021).

     Accordingly, Plaintiffs sufficiently alleged a fraudulent omission claim and Count IV may

proceed.

     **f)  Count V:  Breach of Implied and Written Warranties under the Magnuson-Moss Warranty Act (Shaaya and Freiburghouse)**

     Under Count V, Shaaya and Freiburghouse assert that Defendant breached implied and

written warranties in violation of the MMWA, 15 U.S.C. § 2301 *et seq.* FAC ¶¶ 113–23.  "To state

a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written

or implied warranty under state law." *Cummings*, 401 F. Supp. 3d at 314 (citing *Garcia*, 127 F.

Supp. 3d at 232).  "To that effect, claims under the MMWA stand or fall with the express or

implied warranty claims under state law." *Cummings*, 401 F. Supp. 3d at 314 (citing *Cali v.

Chrysler Grp. LLC*, No. 10-7606, 2011 WL 383952, at *4 (S.D.N.Y. Jan. 18, 2011)); *see also

Gould v. Helen of Troy Ltd.*, No. 16-2033, 2017 WL 1319810, at *5 (S.D.N.Y. Mar. 30, 2017).

Because Shaaya and Freiburghouse have sufficiently stated a claim for a breach of the implied

warranty of merchantability (*see supra* section 3(d); *infra* section 3(i)), their claims under Count

V may proceed at this time.

     **g)  Count VI:  Unjust Enrichment (Shaaya and Freiburghouse)**

     Under Count VI, Shaaya and Freiburghouse assert unjust enrichment claims under their

respective state's laws. FAC ¶¶ 124–29.  New York allows for free-standing unjust enrichment

claims. *See Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018).  To plead an

unjust enrichment claim under New York law, a plaintiff must establish: "(1) that the defendant

benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Medical Center v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (citation omitted).   By contrast, "in California, there is not a standalone cause of action for unjust enrichment. However, "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Hernandez v. Johnson & Johnson Consumer Inc.*, No. 19-15679, 2020 WL 2537633, at *7 (D.N.J. May 19, 2020) (quoting *Astiana v. Hain Celestial Grp.*, Inc., 783 F.3d 753, 762 (9th Cir. 2015)).

Defendant argues that Plaintiffs' unjust enrichment claims must be dismissed because they are duplicative of other claims. Mot. at 35–36.   However, at the motion to dismiss stage of litigation, a plaintiff may plead unjust enrichment as an alternative theory of relief to other related claims asserted in the complaint. *See Astiana*, 783 F.3d at 762–73 (citing Fed. R. Civ. P. 8(d)(2)); *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d Cir. 2014) (same).   Here, Plaintiffs allege that Defendant has unjustly profited by selling and leasing vehicles with malfunctioning DPF systems, as well as charging owners and lessees to repair these DPF Defects. FAC ¶¶ 124–129.   Thus, as Plaintiffs have asserted that Defendant unjustly benefited at Plaintiffs' expense, Plaintiffs have adequately alleged an unjust enrichment claim. *See Bailey v. Rite Aid Corp.*, No. 18-6926, 2019 WL 4260394, at *8 (N.D. Cal. Sept. 9, 2019); *Burton v. Iyogi, Inc.*, No. 13-6926, 2015 WL 4385665, at *11 (S.D.N.Y. Mar. 16, 2015).

Accordingly, Count VI may proceed.

**h)   Count VII and VIII:   Violations of California's Consumer Legal Remedies Act and Unfair Competition Law (Freiburghouse)**

Under Counts VII and VIII, Freiburghouse asserts that Defendant violated the CLRA § 1750 *et seq.* and the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*, respectively, by knowingly

concealing (or failing to disclose) the alleged DPF Defect. FAC ¶¶ 130–56.[13]  To assert a claim

under the CLRA pursuant to a theory of omission, the plaintiff must sufficiently allege that the

defendant omitted material facts "contrary to a representation actually made by the defendant, or

an omission of fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 162 F. Supp.

3d 1016, 1024 (N.D. Cal. 2016) (citation omitted).   Similarly, to succeed under the UCL on a

theory of fraudulent omission, the plaintiff must demonstrate that the defendant had a duty to

disclose the omitted fact. *Id.* at 1026.

Defendant argues that Freiburghouse's CLRA and UCL claims must be dismissed because

he fails to sufficiently allege that Defendant had a duty to disclose the alleged DPF Defect. Mot.

at 31–34.[14]  Under California law, a manufacturer's duty to disclose is analyzed the same under

the CLRA and the UCL as it is for a common law fraudulent concealment claim. *See Gray*, 554 F.

App'x at 609 ("When analyzing a UCL, CLRA, or fraudulent concealment claim, California law

instructs that a manufacturer's duty to consumers is limited to its warranty, unless a safety issue is

present or there has been some affirmative misrepresentation.") (citing *Daugherty*, 144 Cal. App.

4th at 834–35); Mot. at 33 (recognizing that the duty to disclose under the CLRA "is virtually

identical to the 'duty to disclose' element discussed with respect to Plaintiff's fraudulent omission

---

[13] The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer," Cal. Civ. Code § 1770(a), and prohibits conduct "likely to mislead a reasonable consumer," *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680, (2006) (internal quotation marks omitted).  The UCL prohibits "unfair competition" defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17200.

[14] Defendant also argues that the CLRA claim must be dismissed because Freiburghouse lacks Article III standing. Mot. at 31.  However, this Court has already found that Freiburghouse has standing to assert his claims. *See supra* section II(b).

claim"). Thus, for the reasons stated *supra* section III(e), the Court finds that Freiburghouse has sufficiently alleged a duty to disclose the DPF Defect under the CLRA and the UCL.

Accordingly, Defendant's motion to dismiss Counts VII and VIII is denied.

### i)  Count X:  Breach of Implied Warranty of Merchantability in violation of California's Song-Beverly Consumer Warranty Act (Freiburghouse)

Under Count X, Freiburghouse asserts that Defendant breached the implied warranty of merchantability in violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 and 1791.1, *et seq.*, by selling him an unsafe and unreliable vehicle. FAC ¶¶ 165–71.  Under the Song-Beverly Consumer Warranty Act, the "'[i]mplied warranty of merchantability' or 'implied warranty that goods are merchantable' means that the consumer goods meet each of the following: (1) Pass without objection in the trade under the contract description. (2) Are fit for the ordinary purposes for which such goods are used . . ." *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 26 (2007) (quoting Cal. Civ. Code, § 1791.1, subd. (a)).  California courts, like New York courts, find that plaintiffs sufficiently state a claim for a breach of the implied warranty of merchantability "where a plaintiff alleges that his vehicle fails to provide safe, reliable, transportation." *Loo v. Toyota Motor Sales, USA, Inc.*, No. 19-750, 2020 WL 4187918, at *5 (C.D. Cal. Apr. 10, 2020).  There is no privity requirement under the Song-Beverly Act. *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 982 (N.D. Cal. 2014); *Ehrlich*, 801 F. Supp. 2d at 921.

Here, Freiburghouse alleges that in August 2020 he experienced an issue with the DPF's warning light system, which did not alert him when the DPF was clogged. FAC ¶ 14.  Despite repairs, Freiburghouse alleges that his warning lights system is still defective and his vehicle still suffers from the DPF Defect (id. ¶ 12), which can cause sudden and unexpected loss of power, exhaust inhalation by vehicle occupants, and increased risk of fire (id. ¶¶ 29).  Given these

purportedly dangerous defects, the Court finds that Freiburghouse has sufficiently alleged that his vehicle fails to provide safe and reliable transportation. *See Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1339 (C.D. Cal. 2013) (plaintiffs sufficiently stated implied warranty claim because they alleged that excessive oil consumption defect could cause engine failure); *Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 173 (2014) (finding that sunroof defect, wherein sunroof would open and close on its own, sufficiently supported an implied warranty claim because it purportedly created a substantial safety hazard).

Accordingly, Freiburghouse has sufficiently stated an implied warranty of merchantability claim, and Count X may proceed at this time.

## IV.   <u>Conclusion</u>

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 30) the First Amended Class Action Complaint (ECF No. 24) is denied.  Counts I, III, IV, V, VI, VII, VIII, and X may proceed.  Counts II and IX may also proceed to the extent Plaintiffs allege Defendant breached the NVLW, but not to the extent that Plaintiffs allege Defendant breached the Federal Emissions Warranty.  Regarding the Federal Emissions Warranty, Plaintiffs may file a second amended complaint that cures the pleading deficiencies discussed herein within thirty (30) days of the date of this Opinion.  An appropriate Order follows this Opinion.

**Date:** June 29, 2022

s/ Claire C. Cecchi
_____
**HON. CLAIRE C. CECCHI, U.S.D.J.**